730 A.2d 935 (1999)
HOUSING AUTHORITY OF the COUNTY OF CHESTER, Appellee/Cross-Appellant,
v.
PENNSYLVANIA STATE CIVIL SERVICE COMMISSION, Appellant/Cross-Appellee.
Supreme Court of Pennsylvania.
Argued April 29, 1998.
Decided April 30, 1999.
*937 John Spangler, West Chester, for Housing Authority of Chester Co.
Frederick C. Smith, Jr., Edward J. Bohan, Harrisburg, for State Civil Service Com'n.
Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

OPINION OF THE COURT
CASTILLE, Justice.
This Court granted review of this matter in order to decide whether the Commonwealth Court erred by holding that the State Civil Service Commission ("Commission") has standing to enforce the veterans' preference provisions of the Military Affairs Act, 51 Pa.C.S.A. §§ 7101 et seq., at its own initiative; and whether the Commission erred by determining that the Housing Authority of the County of Chester ("Housing Authority") violated the Military Affairs Act when it refused to offer the job of Executive Director 3, a civil service merit system position, to the lone veteran candidate among the group of the three highest ranked certified eligible candidates. For the reasons that follow, we find that the Commission has the authority to enforce the Military Affairs Act at its own initiative, that the Commission correctly determined that the Housing Authority violated the Military Affairs Act by selecting a non-veteran candidate to fill its Executive Director position under these circumstances, and that the relevant provisions of the Military Affairs Act comport with the United States and Pennsylvania Constitutions. Accordingly, we affirm in part and reverse in part the decision of the Commonwealth Court.
In February of 1993, Fredrick Brown, then-Executive Director of the Housing Authority, resigned.[1] In May of 1993, the Housing Authority requested the Commission to open an examination for the vacant Executive Director 3 position. Troy L. Chapman and John J. Fitzgerald both possessed the minimum experience and training requirements and were tested for the position of Executive Director 3.[2] Chapman, who is not a veteran, passed the test with a score of 82.00. Fitzgerald, who is a veteran, passed the test with a score of 91.00, including ten (10) additional points added to his raw score as required by the Veterans' Preference provisions of the Military Affairs Act. See 51 Pa.C.S. § 7103(a).[3] Chapman and Fitzgerald, along with five other candidates who had previously taken the exam, appeared on *938 the Certificate of Eligibles list for the position of Executive Director 3.[4] On April 13, 1995, the Commission issued this list to the Housing Authority.[5] Both Chapman (the "non-veteran") and Fitzgerald (the "qualified veteran") were within the "Rule-of-Three" on the Certification of Eligibles.[6] On July 3, 1995, the Housing Authority appointed the non-veteran to the position of Executive Director 3.
Subsequently, the Commission initiated an audit of the Certification of Eligibles. On August 11, 1995, Steve Shartle, the Commission's Chief of Technical Assistance and Audit, informed the Housing Authority's Director of Operations, Bertha Dantzler, that the non-veteran's appointment was not in compliance with the Commission's regulations or the veterans' preference provisions of the Military Affairs Act. Specifically, Shartle informed Dantzler that if an available veteran is within the Rule-of-Three, the veteran must be granted appointment preference.[7] On August 28, 1995, Dantzler replied by letter that the Board of Directors of the Housing Authority believed that the non-veteran's appointment did not violate either the Military Affairs Act or the Civil Service Act, and that the non-veteran was far more qualified to be the Executive Director of the Housing Authority.
Subsequently, pursuant to 71 P.S. § 741.951(d), the Commission convened an investigative hearing to determine whether the appointment of the non-veteran was in compliance with Pennsylvania law.[8] By adjudication and order dated May 17, 1996, the Commission concluded that the Military Affairs Act mandated that the qualified veteran be offered the Executive Director 3 position and that the Act permitted the appointment of a non-veteran only if the qualified veteran declined the position. Accordingly, the Commission ordered *939 the position to be vacated and further directed that an offer of employment be made to the qualified veteran.
The Housing Authority filed an appeal from the Commission's order to the Commonwealth Court, contending first that the Commission had no standing to enforce the veterans' preference provisions of the Military Affairs Act sua sponte,[9] and second that it had erred by interpreting the Military Affairs Act to require that the qualified veteran be offered the position at issue. On March 12, 1997, the Commonwealth Court reversed the Commission's order directing the job to be offered to the qualified veteran, determining that while the Commission had standing to enforce compliance with provisions of the Military Affairs Act sua sponte, the Commission had erred by interpreting the Act to require the Executive Director 3 position to be offered to the qualified veteran. Specifically, the Commonwealth Court determined that under Brickhouse v. Spring-Ford Area School District, 540 Pa. 176, 656 A.2d 483 (1995), the Housing Authority could use its own criteria to determine whether a veteran possessed the threshold "requisite qualifications" for the Executive Director 3 position such that he would be entitled to veterans' preference under 51 Pa.C.S.A. § 7104(b)(see fn.7, supra). On December 19, 1997, this Court granted allocatur.

I
The first question which we must resolve is whether, under the Pennsylvania Constitution, the Legislature may confer standing upon the Commission under the Civil Service Act to enforce sua sponte the veterans' preference provisions of the Military Affairs Act. Traditionally, in determining issues of standing, this Court has looked to the federal courts' interpretation of Article III of the United States Constitution.[10] Under Article III, federal courts may not exercise jurisdiction over matters in which a "case" or "controversy" has not been presented. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 578, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).[11] The United States Supreme Court has interpreted the words "case" and "controversy" to mean that the federal courts may entertain suits only where a plaintiff alleges a particularized, concrete injury to himself which is causally traceable to the complained-of action by the defendant and which may be redressed by the judicial relief requested. Id. Where a so-called "injury-in-fact" to the plaintiff is lacking, the federal courts may not entertain jurisdiction, notwithstanding express statutory authorization, *940 for to do so would be to violate the mandate of Article III. See Lujan, supra, 504 U.S. at 578, 112 S.Ct. 2130 (while statute can broaden the categories of injury that may be alleged in support of standing, it may not deviate from the traditional Article III requirement that the party seeking judicial review must be the party who has actually suffered the injury); Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 100, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)(Congress cannot statutorily erase Article III's standing requirements by granting the right to sue to a plaintiff who would not otherwise have standing); Chicago Steel and Pickling Co. v. Citizens for a Better Environment, 523 U.S. 83, 118 S.Ct. 1003, 1011, 140 L.Ed.2d 210 (1998)(questions of Article III standing must be addressed before questions of whether the statute authorizes a cause of action).
An agency would arguably have standing to sue in federal court under Article III if it brought suit to enjoin ongoing or future action which threatened the vitality of the statutory scheme over which the agency exercised authority. In that case, the agency would be alleging a sufficiently concrete harm, since the very existence of the agency is tied to the vitality of the statutory scheme which it oversees. Cf. General Tel. Co. of the Northwest v. EEOC, 446 U.S. 318, 323, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)(EEOC has statutory authority to sue to enjoin ongoing unlawful practices and, concomitantly, to seek relief for past victims of discrimination). Here, however, the only complained-of action occurred in the past, and the only injury which ensued was the injury to the qualified veteran, a non-party to this action. The Commission itself never alleged that it has suffered or will suffer any harm, or that its statutory mandate will in any way be impaired as a result of the complained-of action. Under the prevailing federal precedent, a similarly situated agency would lack Article III standing to sue in the federal courts, notwithstanding any express statutory authorization to enforce the statute sua sponte.[12]
However, unlike the standing requirement in the federal courts, the standing requirement which this Court has traditionally imposed does not ascend to the level of a Constitutional mandate. This Court's jurisdiction is supplied by Article V, Section 2 of the Pennsylvania Constitution of 1968, which states:
The Supreme Court (a) shall be the highest court of the Commonwealth and in this court shall be reposed the supreme judicial power of the Commonwealth; (b) shall consist of seven justices, one of whom shall be the Chief Justice; and (c) shall have such jurisdiction as shall be provided by law (emphasis added).
Section 1 of the schedule to Article V further provides:
The Supreme Court shall exercise all the powers and, until otherwise provided by law, jurisdiction now vested in the present Supreme Court....
*941 Significantly, the drafters of the Pennsylvania Constitution did not restrict this Court's jurisdiction to matters in which a "case" or "controversy" has been presented, as did Article III of the federal Constitution. Instead, as indicated by the language of sections 1 and 2 of Article V, the framers of the Pennsylvania Constitution expressly enabled the Legislature to confer jurisdiction upon the Supreme Court of Pennsylvania as "provided by law."[13] Similarly, the framers of our Constitution vested the Commonwealth Court, from which this appeal was taken, with "jurisdiction as shall be provided by law." Pa. Const. Art. V, § 4.
Accordingly, if a statute properly enacted by the Pennsylvania legislature furnishes the authority for a party to proceed in Pennsylvania's courts, the fact that the party lacks standing under traditional notions of our jurisprudence will not be deemed a bar to an exercise of this Court's jurisdiction, since the Pennsylvania legislature constitutionally may enhance or diminish the scope of this Court's jurisdiction. Consistent with the text of the Pennsylvania Constitution, we have repeatedly recognized that the fact that a party lacks standing does not by itself deprive this Court of jurisdiction over the action, as it necessarily would under Article III of the federal Constitution. See Beers v. Unemployment Comp. Bd. of Review, 534 Pa. 605, 611, 633 A.2d 1158, 1161 (1993); Witt v. Dep't of Banking, 493 Pa. 77, 83, 425 A.2d 374, 376 (1981); Jones Memorial Baptist Church v. Brackeen, 416 Pa. 599, 602, 207 A.2d 861, 863 (1965); contra Chicago Steel and Pickling Co. v. Citizens for a Better Environment, supra 523 U.S. at ___, 118 S.Ct. at 1011 (issue of standing is an issue of jurisdiction for a federal court).
In sum, the Pennsylvania legislature may vest a governmental agency like the Commission with the authority to enforce the veterans' preference provisions of the Military Affairs Act in the appellate courts of this Commonwealth sua sponte, regardless of whether the Commission itself has suffered any cognizable injury which would afford it standing under our jurisprudence. For the reasons set forth below, we agree with the Commonwealth Court that the Commission has in fact been vested with statutory authority to enforce sua sponte provisions of the Military Affairs Act.
Section 203 of the Civil Service Act, setting forth the duties of the Commission, provides in relevant part as follows:
It shall be the duty of members of the commission as a body
...
(3) To make investigations on its own motion and, in its discretion, on petition of a citizen concerning any matter touching the enforcement and effect of the provisions of this act and to require observance of the provisions of this act and the rules and regulations thereunder.
71 P.S. § 741.203(3).[14] Thus, it is clear that the Commission has the authority to enforce sua sponte both the provisions of the Civil Service Act and the rules and regulations adopted under the Civil Service *942 Act. The Commission has enacted Management Directive 580.21 Amended,[15] which states that the Directive is applicable to all lists established by the Commission as a result of examinations held pursuant to Article V of the Civil Service Act. The Directive provides in relevant part:
2. POLICY. Veterans' preference applies to appointment only, as follows:
a. Persons entitled to veterans' preference under the Military Affairs Act who take civil service examinations for appointment will:
(1) Receive 10 additional points on their final earned ratings.
(2) Have mandatory appointment preference over non-veterans when their names appear together within the Rule-of-Three on employment certifications.
... (emphasis added).
The crux of this matter is whether Management Directive 580.21 Amended, which essentially incorporates section 7104(b) of the Military Affairs Act, was validly enacted by the Commission. If the Directive is valid, then it is clear that the Commission has the ability to enforce it sua sponte under the authority of 71 P.S. §§ 741.203(3) and 741.951(d), supra. The Housing Authority argues that the legislature chose not to give the Commission the authority to enforce the veterans' preference provisions of the Military Affairs Act sua sponte, and that Management Directive 580.21 constitutes an undue interference by the Commission with the legislative prerogative. We disagree.
This Court has long recognized the distinction in administrative agency law between the authority of a rule adopted pursuant to an agency's legislative rule-making power and the authority of a rule adopted pursuant to an agency's interpretive rule-making power. Girard School District v. Pittenger, 481 Pa. 91, 94-95, 392 A.2d 261, 263 (1978). The former type of rule is the product of an exercise of legislative power by an administrative agency, pursuant to a grant of legislative power by the legislative body, and is valid and as binding upon a court as a statute if it: (a) is within the granted power; (b) is issued pursuant to proper procedure, and (c) is reasonable. Id. (citing K.C. Davis, 1 Administrative Law Treatise § 503, at 299 (1958)). A court, in reviewing such a regulation, is not at liberty to substitute its own discretion for that of administrative officers who have kept within the bounds of their administrative powers. To show that these powers have been exceeded in the field of action involved, it is not enough that the prescribed system of accounts shall appear to be unwise or burdensome or inferior to another. Error or lack of wisdom in exercising agency power is not equivalent to abuse. What has been ordered must appear to be so entirely at odds with fundamental principles as to be the expression of a whim rather than an exercise of judgment. See id. (citing AT & T v. United States, 299 U.S. 232, 236-37, 57 S.Ct. 170, 81 L.Ed. 142 (1936)(additional citations omitted)).
Here, the Management Directive at issue was adopted pursuant to the Commission's legislative rule-making power. Specifically, it was adopted pursuant to 71 P.S. § 741.203, which provides in relevant part:
§ 741.203. Duties of Commission
It shall be the duty of members of the Commission as a body

*943 (1) After public hearing, as hereinafter set forth, to establish, adopt and amend rules, either on its own motion or upon recommendation of the director, for making effective the provisions of this Act....
Since the Management Directive at issue is legislative in character, it will be deemed valid and binding if it: (a) is within the granted power; (b) is issued pursuant to proper procedure, and (c) is reasonable. Girard School District, supra, 481 Pa. at 94-95, 392 A.2d at 263. The Housing Authority contends only that the Management Directive at issue was not "within the [Commission's] granted power." However, the Housing Authority overlooks the fact that the legislature vested the Commission with broad rule-making authority to "make effective the provisions of this [Civil Service] Act." Among the provisions of the Act is a statement of purpose, which provides:
§ 741.2. Purpose
Greater efficiency and economy in the administration of the government of this Commonwealth is the primary purpose of this act. The establishment of conditions of service which will attract to the service of the Commonwealth qualified persons of character and ability and their appointment and promotion on the basis of merit and fitness are means to this end.
Thus, the Commission is charged with promulgating rules and regulations to effectuate the purpose of the act, and the purpose of the Act, inter alia, is to establish conditions by which qualified persons of character and ability will be appointed on the basis of merit and fitness. Through the provisions of the Military Affairs Act, our Legislature has evidenced its belief that the unique experience acquired by veterans should be taken into account in determining the "character" and "ability" of applicants for civil service positions.
Thus, by enacting Management Directive 580.21, the Commission reflected the will of the legislature that veterans be given mandatory preference in appointment when their names appear together with those of non-veterans on a list of eligibles.[16] It would be strange indeed to posit that Management Directive 580.21 Amended is ultra vires when it accurately reflects the will of the legislature regarding the "character" and "ability" of veterans for civil service positions, and when the Commission is charged with developing standards which measure the "character" and "ability" of civil service applicants.
Further support for the conclusion that Management Directive 580.21 Amended was promulgated validly is found in 71 P.S. § 741.501, which states in relevant part:
Except as otherwise provided in this act, appointments of persons entering the classified service or promoted therein shall be from eligible lists established as the result of examinations given by the director to determine the relative merit of candidates.... The director shall prepare the proper State and district employment and promotion eligible lists.
71 P.S. § 741.501 (emphasis added). It seems strained at best to suggest that the director could prepare a "proper" list of eligibles for employment by ignoring the will of the Legislature (and hence the citizens) with regard to the effect of veterans' preference on the list of eligibles. Indeed, only by adhering to Management Directive 580.21 Amended could the director prepare a "proper" list of eligibles. By failing to enact and adhere to the Directive, the Commission would have been totally ignoring the clearly expressed will of the legislature *944 regarding the effect of veterans' preference in civil service.
Finally, we note that in 1974, sections 601 and 602 of the Civil Service Act were amended by P.L. 676, No. 226, § 2. Section 4 of this Act provided that "nothing contained in said Act 226 shall be construed to... detract from the preference given to any civil service employee who is a veteran or a veteran's widow or wife." See 71 P.S. § 741.601, Hist. and Stat. Notes. This language conveys that the 1974 amendments to the Civil Service Act were not to be construed as divesting veterans' preference from the arena of civil service. This is strong evidence that the legislature believed that the provisions of the Veterans' Preference Act were already tacitly incorporated into the Civil Service Act itself.
In sum, we find that the Commission did not exceed its granted power by enacting Management Directive 580.21 Amended. Accordingly, under the three-pronged test set forth in Girard School District, supra, the Management Directive was validly enacted. Since the Management Directive was validly enacted, the Commission had the statutory authority, pursuant to 71 P.S. §§ 741.203(3) and 951(d), supra, to enforce the management directive sua sponte.

II
Having determined that the Commission acted within the authority bestowed upon it by the Legislature in promulgating Management Directive 580.21 Amended and in enforcing the Directive sua sponte, we must now ascertain whether the Management Directive and the provision of the Military Affairs Act from which it derives were properly interpreted by the Commission to require the Housing Authority to appoint Fitzgerald, the sole veteran candidate, to its Executive Director 3 position. If so, we must also address whether this veterans' preference provision comports with fundamental Constitutional precepts.

A
First, the parties dispute whether section 7104(b) mandates the selection of a veteran over a non-veteran when the veteran has passed the civil service examination and is ranked first on the certified list of eligible candidates for a civil service position. Section 7104(b) provides:
§ 7104. Preference in appointment or promotion
(b) Name on civil service list.Whenever any soldier possesses the requisite qualifications, and his name appears on any eligible or promotional list, certified or furnished as the result of any such civil service examination, the appointing or promoting power in making the appointment or promotion to a public position shall give preference to such soldier, notwithstanding, that his name does not stand highest on the eligible or promotional list.
The Commission argues that the statute is clear in mandating the selection of the veteran in such circumstances. The Housing Authority maintains that section 7104(b) allows it to require veterans to meet the Housing Authority's own threshold standards, beyond those measured by the civil service examination, before they are eligible for veterans' preference.[17] The Commonwealth Court, relying on Brickhouse v. Spring-Ford Area School District, 540 Pa. 176, 656 A.2d 483 (1995), determined that under section 7104(b), the Housing Authority could decline to apply the veterans' preference provisions if it determined that a veteran candidate at the top of the civil service list did not possess *945 the "requisite qualifications." See Housing Authority of Chester Cty. v. State Civil Service Comm'n, 692 A.2d 1122, 1126 (Pa. Commw.1997). However, Brickhouse involved veterans' preference in the context of appointment to non-civil service positions under section 7104(a). We find that the Commonwealth Court misapplied our holding in Brickhouse by concluding that section 7104(b) allows appointing authorities to bypass a veteran who has passed the civil service examination and who is ranked first on the certified list of eligible candidates for a civil service position.
To achieve the laudable objective of eliminating the potential for patronage and nepotism in hiring for public positions, all candidates for a civil service position must undergo civil service examinations to determine whether they possess the qualifications for the position at issue. See 71 P.S. §§ 502, 741.1, Hist. and Stat. Notes. The examinations must test the relative capacities of the persons examined to perform the duties of the class of positions to which they seek appointment, based on the appointing authorities description of the position to be filled. Id. at §§ 502, 601. After candidates complete civil service testing, the Commission must certify a ranked eligibility list, reflecting the job-appropriate qualifications established by the public employer, to the officers of the public employer who have appointing authority. Id. at § 601.
In Brickhouse, this Court held that a veteran applying for a non-civil service position and seeking to take advantage of the preference mandated by the Military Affairs Act must be able to demonstrate his ability to perform the job at the level of skill and with the expertise demanded by the employer. Brickhouse, supra, 540 Pa. at 183, 656 A.2d at 486-87. Significantly, the Brickhouse Court noted that "there is neither a civil service list nor an examination applicable to this job." Id. at 180, 656 A.2d at 485. Candidates for civil service positions are required to pass a competitive civil service examination which measures their aptitude for the civil service position at issue. The Court's holding in Brickhouse, however, was motivated by the fact that candidates for non-civil service positions do not undergo any such testing to screen out non-qualified applicants. Consequently, the Court determined that in order for the statute to operate in a rational and, hence, a constitutional manner, the authorities charged with appointing candidates to non-civil service positions must be able to assess a candidate's "ability to perform" in determining whether the candidate is eligible for the position. However, we now find that in the civil service context, a candidate's "ability to perform" is to be measured exclusively by whether the candidate has successfully undergone civil service testing for purposes of determining eligibility for appointment. The appointing authority is not permitted to impose independent requirements to ensure that a specific candidate possesses the requisite qualifications for the job. Our conclusion in this regard derives support from an abundance of statutory sources, from our own precedent, and from sound policy considerations.
First, as previously mentioned, section 7103(a) of the Veterans' Preference Act states as follows:
Whenever any soldier shall successfully pass a civil service appointment or promotional examination for a public position under this Commonwealth, or any other political subdivision thereof, and shall thus establish that he possesses the qualifications required by law for appointment to ... such public position... (emphasis added).
51 Pa.C.S. § 7103(a). It is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute. Pennsylvania State Lodge v. Hafer, 525 Pa. 265, 275, 579 A.2d 1295, 1300 (1990); Berwick Indus. v. WCAB, 537 Pa. 326, 333, 643 A.2d 1066, 1069 (1994)(citing *946 1 Pa.C.S. § 1932). When the meaning of a word or phrase is clear when used in one section, it will be construed to mean the same thing in another section of the same statute. Commonwealth v. Maloney, 365 Pa. 1, 11, 73 A.2d 707, 712 (1950). A conflict between various statutes or parts thereof is to be avoided and, if possible, the apparently conflicting provisions must be construed together with the more specific provisions prevailing over the general ones. In re: Estate of Francis J. Romani, 547 Pa. 41, 45, 688 A.2d 703, 705 (1997). Here, to accept the Housing Authority's argument that a veteran may not possess the "requisite qualifications" for a civil service position under section 7104(b) even though he has successfully passed the civil service examination would be to ignore the clearly expressed mandate of section 7103(a) that the passing of the examination itself establishes the "qualifications required by law" in the civil service context. Because the meaning of the term at issue is clear in section 7103(a), we must construe the term identically in section 7104(b) in order to avoid an internal conflict in the statute.
Similarly, the Civil Service Act independently supports the conclusion that the passing of a civil service examination renders one "qualified" for a civil service position. Section 3 of the Civil Service Act provides:
(b) Eligible List means an employment list, a promotion list, or a reemployment list.
....
(n) Employment List means a list of persons who have been found qualified by an entrance examination for appointment to a position in a particular class.
71 P.S. § 741.3 (emphasis added). Again, we note that conflicts between various statutes must be avoided when possible. Romani, supra, 547 Pa. at 45, 688 A.2d at 705. To determine that a veteran who has been found qualified by a standardized competitive entrance examination and is on an Eligible List still does not possess the "requisite qualifications" for a civil service position under section 7104(b) would be to create a conflict with this language from the Civil Service Act, since being on the Eligible List is synonymous with being qualified under the Civil Service Act.
Furthermore, we note that the legislature has imposed a categorical requirement that appointing authorities make their appointment only from among the top three scoring candidates on the civil service list. 71 P.S. §§ 601, 602. If the legislature believed that the appointing authority could use other qualities besides examination performance to assess whether a candidate possessed the "requisite qualifications," then it would have been absurd for the legislature to require that a candidate be appointed from among the top three scoring candidates on the civil service list, without regard to any other factor. The first principle of statutory construction is that courts will not interpret legislative enactments in a manner which imputes absurdity to the legislative enactment. 1 Pa.C.S. § 1922(1).
Perhaps most significantly, in Commonwealth ex rel. Graham v. Schmid, 333 Pa. 568, 3 A.2d 701 (1938), this Court reviewed a statute which provided: "[a]mong those persons possessing qualifications and eligibility for appointment, preference in appointment shall be given to honorably discharged soldiers and sailors who served in the Army or Navy of the United States during time of war...." Id. at 571, 3 A.2d at 702. The statute also accorded a mandatory veterans' preference to any veteran whose name appeared in the top four on the Eligible List pursuant to his performance on a civil service examination. Id. This Court determined that the statute required veteran eligibles for civil service positions to be mandatorily preferred over non-veteran eligibles, and, as discussed infra, that the statute did not thereby operate unconstitutionally. The threshold requirement that veterans possess the "qualifications and eligibility for appointment" was interpreted to be simply *947 a requirement that veterans must pass the civil service examination. See id. at 577-78, 3 A.2d at 706. Accordingly, by interpreting the "requisite qualifications" language in the statute at issue to impose threshold qualifications beyond the passing of the civil service examination, this Court would be ignoring its own precedent.
Finally, we note that allowing an employer to develop additional hiring criteria for civil service positions would defeat the principal purpose of the Civil Service Act by opening the door to the very abuses which civil service testing was designed to protect against. Hiring decisions rooted in patronage or nepotism could easily be concealed under the guise that a certain candidate was the only one who possessed the "requisite qualifications." Unnecessary litigation would be fostered as the overlooked candidates challenged the propriety of the additional criteria used by the appointing authority.
In sum, the statute clearly requires that mandatory veterans' preference be afforded to any veteran who is applying for a civil service position and who is on an Eligible List due to his performance on the civil service examination. The appointing authority may not impose additional threshold requirements on a veteran under the guise that it is setting forth the "requisite qualifications" for purposes of section 7104(b).[18] Thus, in the matter sub judice, the statute required that the qualified veteran be offered the Executive Director 3 position.

B
Having determined that the veteran in this case possessed the "requisite qualifications" for the civil service position at issue and hence was entitled to veterans' preference under section 7104(b), we must next determine whether section 7104(b) operates in an unconstitutional manner by mandating that veterans possessing the requisite qualifications be preferred for appointment to a civil service position over non-veterans possessing the requisite qualifications.[19] The Housing Authority suggests that it is unconstitutional to confer a mandatory appointment preference upon a veteran who is applying for a civil service position and whose name appears on a certified list of eligibles. Amicus Pennsylvania State Association of Boroughs ("the Association") likewise believes that the mandatory preference is unconstitutional, but only as it applies to non-entry level positions such as the one at issue. Thus, the Association has filed a brief urging affirmance on this issue in which it suggests that we interpret the mandatory appointment preference in the statute to apply only to entry-level positions. However, we agree with the Commission that section 7104(b) clearly intends for the mandatory preference to apply to all appointments, *948 entry-level or otherwise, and that the statute does not thereby operate in an unconstitutional manner.
First, the plain words of the statute do not accommodate a parsing between appointment to entry-level and appointment to non-entry-level positions, as the Association urges. While we strive to interpret statutes in a manner which avoids constitutional questions, we will not ignore the plain meaning of the statute to do so. See Boettger v. Loverro, 526 Pa. 510, 518, 587 A.2d 712, 716 (1991). The statute states that "... the appointing or promoting power in making an appointment or promotion to a public position shall give preference to such soldier...." 51 Pa. C.S. § 7104(b)(emphasis added). The statute simply does not limit the horizon of public positions in which the mandatory preference in appointments is implicated. Consequently, we are squarely faced with the issue of whether the statute violates the Pennsylvania Constitution by operating in this fashion.
Our analysis of the Constitutional issue is guided by three cases in which this Court has assessed the constitutionality of various provisions of the Veterans' Preference Act. First, in Schmid, supra, in reviewing the constitutionality of a statute virtually identical to the one at issue here, this Court first articulated the standard it would use to determine whether such a statute was constitutional:
The [constitutional] theory on which these cases are decided is that, while it may be perfectly lawful to prefer veterans, there must be some reasonable relation between the basis of preference and the object to be attained, the preference of veterans for the proper performance of public duties.
Id. at 573, 3 A.2d at 703. Applying this standard to the provisions at issue, the Court stated:
Our conclusion ... is that, so long as the statute requires passage of the [civil service] examination, a veteran may constitutionally be preferred over non-veterans whether the statute be mandatory or directory ... passage [of the examination] satisfies the requirement that appointments of public employees be made only of persons reasonably fitted for the position.... The provision that those in the first four of the eligible list shall be preferred must ... be construed to be mandatory, with the exception that the appointing power need not select such veteran if it is found on a fair basis that he is morally or physically unfit to be employed. Thus construed it is constitutional under all the cases which have been cited.
Id. at 577-78, 3 A.2d at 706.
In Commonwealth ex rel. Maurer v. O'Neill, 368 Pa. 369, 83 A.2d 382 (1951), this Court held that the reasoning of Schmid could not be extended to the context of civil service promotions. Thus, the Court struck down as unconstitutional a mandatory ten-point examination score add-on for veterans seeking civil service promotions. Id. at 373, 83 A.2d at 384. The O'Neill Court reaffirmed the reasoning of Schmid that, in the appointments context, veterans' military experience makes them more desirable applicants for public positions where discipline, loyalty, and public spirit are essential. Id. However, the Court held that in determining who is to be awarded a promotion, the primary consideration is the skill of the particular candidates in the performance of their tasks, and, in the promotion context, the training and experience gained by veterans solely as a result of military service becomes less important.
Finally, in Hoffman v. Twshp. of Whitehall, 544 Pa. 499, 677 A.2d 1200 (1996), this Court reaffirmed the holding of O'Neill that in the context of civil service promotions, the mandatory veterans' preference provisions are unconstitutional. The Hoffman Court noted that principles of due process and equal protection compelled *949 this conclusion. Id. at 505, 677 A.2d at 1203.[20]
Thus, a clear line can be discerned in our jurisprudence between mandatory veterans' preference in the context of appointment to a civil service position as opposed to the context of promotion to a civil service position from within the promoting agency or organization. The operation of the mandatory veterans' preference provisions in the former context is constitutional; in the latter context it is not. The reason for this distinction is simple. In the promotions context, the competing candidates are seeking to move up from within the same organization. They will have had ample opportunity during their tenure in that agency or organization to hone the skills relative to the promotion which they seek. If, during the period in which they have had the opportunity to develop their skills in the exact same environment as the rival candidates, they have failed to progress to the same skill level as those rivals, then the fact that they had experience in the armed services is not probative and does not justify the candidate's shortcomings. On the other hand, when candidates seek appointment to a position in an organization or agency in which none of them have any experience, the fact that one of the candidates has military experience may rationally be viewed as that which distinguishes him as the superior candidate for the position. See Schmid, supra, 333 Pa. at 573, 3 A.2d at 703 ("As a basis for appointment it is not unreasonable to select war veterans from candidates for office and to give them a certain credit in recognition of the discipline, experience, and service represented by their military activity") (emphasis added). In the appointments context, employers have not been able to compare the candidates' performance in the same workplace as they have in the promotions context. Thus, in the appointments context, it is not unreasonable for the legislature to use military experience as the factor which distinguishes candidates from different backgrounds who are within the top three on the Eligible List. The fact that the position at issue here is a non-entry-level position as opposed to an entry-level position simply does not alter the reasonableness of the distinction under the principles of Schmid.
Accordingly, we reaffirm the sound principles of Schmid and find that the mandatory veterans' preference provisions of section 7104(b) do not run afoul of the Constitution in the context of appointments to a civil service position. Thus, the order of the Commonwealth Court is vacated and this matter is remanded for further proceedings which are consistent *950 with this opinion. Since the Housing Authority improperly declined to offer the civil service position of Executive Director 3 to the qualified veteran, John Fitzgerald, we now order the position to be offered to him. Should he accept, we order the non-veteran, Troy Chapman, to be ousted from the position in favor of Fitzgerald. See Schmid, supra (Court's order provided for appointment of veteran to position which had been improperly given to non-veteran). Should Fitzgerald decline, Chapman may retain his position. Jurisdiction is relinquished.
Justice SAYLOR files a concurring opinion.
Justice ZAPPALA files a dissenting opinion in which Justices CAPPY and NIGRO join.
SAYLOR, Justice, concurring.
I join the majority's opinion save for its discussion of standing in Section I. In my view, an assessment of the Commission's ability to enforce the veteran's preference provisions of the Military Affairs Act does not implicate principles of standing, but merely the authority of the Commission under its enabling legislation, the Civil Service Act.
ZAPPALA, Justice, dissenting.
I agree with Mr. Justice Saylor's conclusion that the question here involves the authority of the Civil Service Commission pursuant to its enabling legislation, the Civil Service Act, to enforce the veterans' preference provisions of the Military Affairs Act. However, because, I disagree that the Commission possesses such authority, I respectfully dissent.[1]
The Chester County Housing Authority, the appointing authority, hired Troy L. Chapman as its executive director. The Housing Authority did so in compliance with the Civil Service Act, as that Act requires the appointing authority to select a candidate for hire from among the three highest ranking persons for the position appearing on an employment list. Specifically, Section 602 of the Act, known as the "Rule-of-Three," provides in relevant part:
If the vacant position is to be filled from among the names of persons certified from the employment list by the director to the appointing authority, he shall elect a person from among the three highest ranking persons for the class of position to be filled....
71 P.S. § 741.602. Here, it is not the veteran candidate, John Fitzgerald, who is complaining about the appointing authority's hiring decision, rather it is the Civil Service Commission itself that is attempting to enforce the veterans' preference provisions of the Military Affairs Act. The Commission, however, as a Commonwealth agency is limited to the powers granted by the legislature pursuant to its enabling legislation. See Pa. Human Relations Commission v. Zamantakis, 478 Pa. 454, 387 A.2d 70, 72 (1978) (stating that this Court has said many times that administrative agencies "can only exercise those powers which have been conferred upon [them] by the Legislature"). Here, the applicable legislation is the Civil Service Act. Nowhere in the Civil Service Act is the Commission granted the explicit authority to enforce the veterans' preference provisions of the Military Affairs Act.
Despite the lack of explicit authority in the Civil Service Act, the Commission, nevertheless, promulgated Management Directive 580.21 in an attempt to incorporate the veterans' preference provisions of the Military Affairs Act into the Civil Service Act. As noted by the majority, "the crux of this matter is whether Management Directive 580.21 Amended, which essentially incorporates section 7104(b) of the Military *951 Affairs Act, was validly enacted by the Commission." Majority Opinion at 942. If so, the Commission has the authority to enforce it sua sponte.[2] As further noted by the majority, "[s]ince the Management Directive at issue is legislative in character, it will be deemed valid and binding if it: (a) is within the granted power; (b) is issued pursuant to proper procedure; and (c) is reasonable." Majority Opinion at 943, citing Girard School District, 481 Pa. 91, 94-95, 392 A.2d 261, 263 (1978). I disagree with the majority's conclusion that the substance of Management Directive 580.21 is within the Commission's granted power. Accordingly, I do not agree that the Commission had the authority here to enforce the veterans' preference provisions.
Management Directive 580.21, ostensibly was adopted pursuant to the Commission's legislative rule-making power set forth at Section 203 of the Civil Service Act, which provides in relevant part:
§ 741.203. Duties of Commission
It shall be the duty of members of the Commission as a body
(1) After public hearing, as hereinafter set forth, to establish, adopt and amend rules, either on its own motion or upon recommendation of the director, for making effective the provisions of this act....
71 P.S. § 741.203 (emphasis added). "This act" clearly refers to the Civil Service Act. Management Directive 580.21, however, attempts to make effective provisions of the Military Affairs Act. It provides:
2. Policy. Veterans' preference applies to appointment only as follows:
a. Persons entitled to veterans' preference under the Military Affairs Act who take civil service examinations for appointment will:
(1) Receive 10 additional points on their final earned ratings.
(2) Have mandatory appointment preference over non-veterans when their names appear together within the Rule-of-Three on employment certifications.
M.D. 580.21 Amended, February 12, 1992.
Management Directive 580.21 clearly conflicts with the explicit statutory mandate of Section 602 of the Civil Service Act, i.e., the Rule-of-Three, in that it requires that veteran candidates be selected over non-veteran candidates. While it may be argued that the Military Affairs Act does, in fact, require that veteran candidates be selected over non-veteran candidates, the question here is who has the authority to mandate such result.[3]
The majority concludes that because the Commission has the authority to promulgate rules relating to the Civil Service Act and because the purpose of the Act is to establish conditions of service to attract qualified persons, the Commission had the authority to incorporate into the Civil Service Act the express legislative desire that veterans be given mandatory preference in appointment over non-veteran candidates. I disagree.
As previously noted, the Commission has not been delegated such authority by way of the Civil Service Act and, in fact, the explicit statutory requirement of the Civil Service Act, the Rule-of-Three, conflicts with the veterans' preference provisions. The legislature could have easily provided for the Commission's authority to enforce the veterans' preference provisions as part of its stated duties, but it failed to do so. Moreover, the legislature specifically *952 set forth the extent of the Commission's duties relative to veterans' preference matters in Section 203(5) of the Civil Service Act. This Section provides:
§ 741.203. Duties of Commission
It shall be the duty of members of the Commission as a body
...
(5) To report on an annual basis, beginning June 1, 1975 and each June first, thereafter, to the General Assembly on all complaints, grievances, and cases arising from questions by veterans with regard to the application of and the results attained by use of the veterans' preference provisions of this act with regard to hiring, promotion, and firing of employees covered by this act.
71 P.S. § 741.203(5). This provision limits the Commission's authority as it relates to veterans' preference to reporting to the General Assembly on complaints, etc., by veterans. Because the legislature specified the Commission's duties relating to veterans' preference, the fundamental maxim of statutory construction, "expressio unius est exclusio alterius," applies and stands for the principle that the mention of one thing in a statute implies the exclusion of others not expressed.
Finally, if the majority's reasoning were taken to its logical conclusion, the Civil Service Commission would be required to promulgate rules whereby veteran candidates are given preference over non-veteran candidates even when the veteran candidate's name does not appear among the three highest names on an eligibility list. Such requirement would, however, directly violate the express statutory requirement of the Civil Service Act, the Rule-of-Three, which the Commission is unquestionably charged with administering.[4]
For the forgoing reasons, contrary to the majority, I would reverse the decision and order of Commonwealth Court insofar as it holds that the Commission has the authority to enforce the veterans' preference provisions of the Military Affairs Act.
Justice CAPPY and NIGRO join this Dissenting Opinion.
NOTES
[1] The parties have stipulated that the position from which Brown resigned is technically classified as "Executive Director 3" and is a civil service merit system position.
[2] As stipulated by the parties, the minimum experience and training requirements necessary to qualify to test for the position of Executive Director 3 are set forth in the Commission's Examination Announcement 129-90, Deputy Executive and Executive Director Positions in City and County Housing Authorities, issued April 20, 1990, which provides:

One year of experience as an Executive Director 2, or two years of experience as an Executive Director 1, or five years of experience in a housing authority or other publicly or privately owned, government subsidized housing project which has included three years of experience supervising or managing a financial or administrative program.
[3] The Constitutionality of the ten-point add-on, mandated by 51 Pa.C.S. § 7103(a), is not at issue in this case.
[4] The Civil Service Act requires the appointing authority to fill the vacant position with one of the people whose names appear on the Certificate of Eligibles List certified by the Commission, except in certain limited circumstances not applicable here. See 71 P.S. § 612.
[5] The Housing Authority had previously requested two Certification of Eligibles lists in January and May of 1994, but did not make an appointment from either of those lists.
[6] The "Rule-of-Three" is found in Section 602 of the Civil Service Act and provides in relevant part as follows:

If the vacant position is to be filled from among the names of persons certified from the employment list by the director to the appointing authority, he shall elect a person from among the three highest ranking persons for the class of position to be filled....
71 P.S. § 741.602; see also 4 Pa.Code § 91.3.
[7] The State Civil Service Commission's Management Directive 580.21 provides:

2. Policy. Veterans' preference applies to appointment only, as follows:
a. Persons entitled to veterans' preference under the Military Affairs Act who take civil service examinations for appointment will:
(1) Receive 10 additional points on their final earned ratings.
(2) Have mandatory appointment preference over nonveterans when their names appear together within the Rule-of-Three on employment certifications.
M.D. 580.21 Amended, February 12, 1992 (emphasis added). Similarly, the applicable provision of the Military Affairs Act provides:
§ 7104. Preference in appointment or promotion
(b) Name on civil service list.Whenever any soldier possesses the requisite qualifications, and his name appears on any eligible or promotional list, certified or furnished as the result of any such civil service examination, the appointing or promoting power in making an appointment or promotion to a public position shall give preference to such soldier, notwithstanding, that his name does not stand highest on the eligible or promotional list.
51 Pa.C.S. § 7104(b).
[8] Section 951(d) of the Civil Service Act provides:

Notwithstanding any other provisions of this section, the commission may, upon its own motion, investigate any personnel action taken pursuant to this Act and, in its discretion, hold public hearings, record its findings and conclusions, and make such orders as it deems appropriate to assure observance of the provisions of this act and the rules and regulations thereunder.
[9] Fitzgerald himself has not been involved in this matter at any stage in the proceedings, as a litigant or otherwise. Subsequent to the decision of the Commonwealth Court, Fitzgerald filed a federal civil rights lawsuit in the Eastern District of Pennsylvania (John H. Fitzgerald v. Housing Authority of the County of Chester, et al, U.S. District Court for the Eastern District of Pennsylvania, No. 97 CV-4285, filed June 27, 1997). Neither the record nor the filings of the parties reflect the status of this matter or the nature of the claims raised.
[10] See Commonwealth v. Pennsylvania Game Comm., 521 Pa. 121, 127, 555 A.2d 812, 816 (1989)(finding U.S. ex rel. Chapman v. Federal Power Comm., 345 U.S. 153, 73 S.Ct. 609, 97 L.Ed. 918 (1953), to be "a sound principle" for resolving whether a Pennsylvania governmental agency had statutory standing); William Penn Parking Garage v. City of Pittsburgh, 464 Pa. 168, 192, 346 A.2d 269, 281 (1975) (citing federal cases to support Pennsylvania standing requirements); Dwyer v. Dilworth, 392 Pa. 123, 127 n. 7, 139 A.2d 653, 655 n. 7 (1958)(citing "case or controversy" requirement in Article III of U.S. Constitution to support Pennsylvania standing requirements).
[11] The operative language in Article III states:

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority ...; to Controversies to which the United States shall be a Party; to controversies between two or more States; between a State and Citizens of another State; between citizens of different States,....
U.S. Const., Art. III, § 2.
[12] See Director of Office of Workers' Comp. Programs, Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co., 514 U.S. 122, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995)(director of agency was not herself aggrieved, and therefore had no standing to pursue appeal in federal courts on behalf of claimant who had never evidenced desire to join in the appeal); Ass'n for Retarded Citizens of Dallas v. Dallas Cty. Mental Health & Mental Retardation Ctr. Bd. of Trustees, 19 F.3d 241, 243 (5th Cir.1994)(organization with a statutory mandate to protect and advocate the rights of the disabled did not have standing to enjoin local Housing Association's obstruction of group home for the disabled because organization itself had not suffered an "injury-in-fact"); cf. Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 345, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)(state agency had associational standing to protect interests of its constituents in federal court only because agency was, for all practical purposes, a trade association vindicating its own concrete interests); United States v. ICC, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949)(where agency was not merely a regulator, but also a market participant and statutory beneficiary, it had standing to sue under the statute).
[13] As this Court recently noted, in addition to the jurisdiction vested in this Court by the legislature, this Court may still independently exercise all the "powers" vested in the Supreme Court at the time the 1968 Constitution was adopted, among which were those collectively referred to as the King's Bench Powers, under Section 1 of the schedule to Article V, supra. In re: Assignment of Judge Bernard J. Avellino, 547 Pa. 385, 390, 690 A.2d 1138, 1140 (1997).
[14] Similarly, 71 P.S. § 741.951, referenced above, provides in relevant part:

(d) Notwithstanding any other provisions of this section, the commission may, upon its own motion, investigate any personnel action taken pursuant to this act and, in its discretion, hold public hearings, record its findings and conclusions, and make such orders as it deems appropriate to assure observance of the provisions of this act and the rules and regulations thereunder (emphasis added).
[15] Management Directives are issued pursuant to 4 Pa.Code § 1.1 et seq., and are "designed to provide comprehensive statements of policy and procedure on matters that affect agencies and employees under the jurisdiction of the Governor." Id. Management Directives are tantamount to regulations or executive orders inasmuch as they are similarly issued "under or pursuant to the laws of this Commonwealth." See Zerbe v. Unemployment Comp. Bd. of Review, 545 Pa. 406, 412, 681 A.2d 740, 743 (1996). Accordingly, as long as the Management Directive herein was validly enacted, the Commission is entitled to enforce the Directive sua sponte just as it would be entitled to enforce sua sponte any valid rule or regulation.
[16] Section 7104 arguably conflicts with the "rule-of-three"set forth at 71 P.S. § 741.602, see fn. 6, supra, since that rule requires the final selection to be from among the three highest ranking persons an the certified list, while section 7104 requires preference to be afforded to a veteran who appears on the certified list even if he is not among the three highest-ranked persons. We need not resolve the apparent conflict here, since the veteran in this matter was in fact among the three highest ranked persons on the certified list.
[17] The Housing Authority relies on the following language in section 7104(b): "[w]henever any soldier possesses the requisite qualifications, and his name appears on any eligible or promotional list, ... the appointing or promoting power ... shall give preference to such soldier ...." (emphasis added). However, the Housing Authority did not set forth the specific "requisite qualifications" it was seeking above and beyond performance on the civil service examination in advance of making its selection of Chapman.
[18] We should note that there are steps which the Housing Authority could have followed here to seek to have the veteran's name removed from the list of certified eligibles so that it could select its preferred candidate without violating the statute. Under Management Directive 580.15 (June 26, 1990)(enacted pursuant to 71 P.S. § 741.601), when the appointing authority can demonstrate clearly that special training or experience is required for the civil service position at issue, the Commission can authorize selective certification of eligibles. Also, 4 Pa.Code § 97.13 allows the appointing authority to raise prompt merit-related objections to an eligible whose name appears upon a certified list. The Housing Authority simply did not follow any of the available procedures for challenging the veteran's qualification prior to making its selection. Instead, it chose to appoint the non-veteran over the veteran and thereby ignore the possibility that its action would be deemed in defiance of the Civil Service and the Military Affairs Act.
[19] Although the Housing Authority does not identify a specific Constitutional provision under which it is advancing its argument, this Court has stated in the past that the Constitutionality of veterans' preference provisions is evaluated under principles of due process and equal protection, as well as under Article I, Section 17 of the Pennsylvania Constitution. See Hoffman v. Township of Whitehall, 544 Pa. 499, 505, 677 A.2d 1200, 1203 (1996).
[20] As an alternative basis for its holding, the Hoffman Court alluded to Article I, Section 17 of the Pennsylvania Constitution, which provides that no law shall be passed "making irrevocable any grant of special privileges or immunities." The Court concluded that the statutory preferences favoring the promotion of veterans were irrevocable, noting that one's status as a veteran is not subject to revocation. We decline to adhere to this dicta from Hoffman in the matter sub judice. See Cheeseman v. Lethal Exterminator, Inc., 549 Pa. 200, 213, 701 A.2d 156, 162 (1997)(when prior Supreme Court opinion devised two tests or approaches and one proved to be more coherent or effective than the other, the less effective test or approach could be classified as dicta and subsequently disregarded); Mt. Lebanon v. Allegheny Cty. Bd. of Elections, 470 Pa. 317, 322, 368 A.2d 648, 650 (1977) (when Court unnecessarily uses alternative Constitutional grounds to resolve a matter, the alternative grounds may be deemed dicta and disregarded in a future case). Our reasons are twofold. First, the dicta from Hoffman is not persuasive since it misconstrues the meaning of Article I, Section 17. Under the Hoffman dicta, a legislative enactment that afforded a categorical parking preference to the permanently handicapped would be unconstitutional, since one's status as a permanently handicapped person is not subject to revocation. This would be absurd. Thus, all that Article I, Section 17 means is that the legislature may not attempt to prevent future legislatures from revoking any privilege that has been granted. See Hoffman, supra, 544 Pa. at 506, 677 A.2d at 1203 (Zappala and Castille, JJ., dissenting). Second, neither the Housing Authority nor the Association (amicus) has argued that the provisions at issue here are unconstitutional under Article I, Section 17.
[1] The majority concludes that the Commission possesses such authority and therefore has standing.
[2] See 71 P.S. § 741.203(3) (the Commission has the duty to require observance of the provisions of this act and the rules and regulations thereunder).
[3] Based on my conclusion that the Commission lacks authority to enforce the veterans' preference provisions of the Military Affairs Act, I would not reach the issue of whether the Military Affairs Act does, in fact, mandate that veteran candidates be selected over a non-veteran candidates.
[4] Significantly, the majority concedes that the Military Affairs Act conflicts with the Rule-of-Three because it would require that any veteran candidate appearing on an eligibility list be given preference whether or not his or her name was among the three highest ranked candidates. See Majority Op. at 944.