**PRESBYTERIAN MEDICAL CENTER OF OAKMONT, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 3, 2001.

Decided Feb. 11, 2002.

---

Christopher S. Lucas, Harrisburg, for petitioner.

Jeffrey P. Schmoyer, Pittsburgh, for respondent.

Before McGINLEY, Judge, FRIEDMAN, Judge, and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Presbyterian Medical Center of Oakmont (PMC), an enrolled provider of nursing facility services in the Commonwealth's Medical Assistance (MA) Program, petitions this Court to review the final orders of the Director of the Bureau of Hearings and Appeals of the Department of Public Welfare (DPW) that affirmed a decision of DPW to deny compensation for services provided to twenty recipients because of Presbyterian's late or incorrectly submitted invoices for such services. We affirm.

DPW's regulations, set forth at 55 Pa. Code § 1101.68, govern the time and manner by which MA nursing facility providers must submit to DPW their claims for payment for services provided to MA recipients.[1] Under Section 1101.68, an MA provider must submit an original invoice within 180 days of the date the provider renders services to an eligible MA recipi-

ent. If the provider fails to submit the invoice within the mandatory 180–day time frame, DPW is required to reject the invoice unless the provider meets the requirements for an exception to the 180–day rule as set forth at Section 1101.68(c) and (d).

Section 1101.68(c) provides, in relevant part, that if there is a delay in DPW's MA eligibility determination for a nursing resident, a provider may submit an invoice beyond the 180–day deadline if the eligibility determination was requested within 60 days of the date of service and DPW received an invoice exception request from the provider within sixty days of receipt of the eligibility determination. Section 1101.68(d) provides, in relevant part, that the provider must submit a written invoice exception request to the DPW Office of Medical Assistance along with all necessary supporting documentation and a correctly completed invoice for invoices governed by subsection (c).

The twenty cases here all involve individual residents under PMC's care await-

---

1. Section 1101.68 provides in pertinent part:

(a) Invoices. When billing for MA services or items, a provider shall use the invoices specified by the Department. . . .

(b) Time frame. MA providers shall submit invoices correctly and in accordance with established time frames. For purposes of this section, time frames referred to are indicated in calendar days. . . .

(1) A provider shall submit original or initial invoices to be received within a maximum of 180 days after the date the services were rendered. . . .

. . . .

(3) . . . . The billing period for long term care providers equals 1 month or the last date of the month in which the service was provided and for which the facility is billing.

(c) Invoice exception criteria. Invoices submitted after the 180–day period will be rejected unless they meet the criteria established in paragraphs (1) or (2).

(1) Eligibility determination was requested within 60 days of the date of service and the

Department has received an invoice exception request from the provider within 60 days of receipt of the eligibility determination.

. . . .

(d) Other invoice exception requirements. In addition to the requirements in subsection (c), the following requirements apply:

(1) A provider shall submit invoice exception requests in writing to the Office of Medical Assistance Programs.

(2) A request for an invoice exception shall include supporting documentation, including documentation to and from the CAO. . . . A correctly completed invoice shall accompany the request.

. . . .

(4) Invoice exceptions will be granted on a one time basis. Exception requests rejected through the claims processing system due to provider error will not be granted additional exceptions. . . .

(5) No exceptions to the normal invoice processing deadlines will be granted under this section.

ing DPW's determination of MA eligibility. PMC was unable to submit original invoices within the required 180 days of treatment because it did not receive notices of the MA eligibility determinations until after the 180–day deadline had passed. When it finally received the eligibility determinations, PMC, contrary to the requirements of Section 1101.68(d), submitted electronic, original invoices for payment. Because these original electronic invoices were submitted after the 180–day period, DPW rejected them as untimely pursuant to Section 1101.68(b)(1). DPW issued "Remittance Advices" that notified PMC of the rejections. PMC eventually submitted invoice exception requests, but DPW rejected these pursuant to Section 1101.68(c)(1) because it received the requests more than 60 days after PMC's receipt of notice of the respective residents' MA eligibility determinations.

PMC appealed the rejection of these requests to DPW's Bureau of Hearings and Appeals. On November 15, 2000, a hearing officer heard twenty-four such appeals on an individual basis, rejecting PMC's request to consolidate the cases. At the hearings, PMC and DPW stipulated to the admission of a spreadsheet that listed the respective resident's name and case number, the reason for the denial, and other relevant data, including the date of receipt of notification that the patient was eligible for MA, the Remittance Advice date, the date the exception request was filed, the date the appeal was filed with the Bureau of Hearings and Appeals, and the MA effective date. There did not appear to be any factual disputes below; rather, the issues all appeared to be ones of law.

On December 1, 2000, the hearing officer issued a report recommending that PMC's appeals be denied. The hearing officer determined that PMC, in each in-stance, failed to meet DPW's regulatory requirements set forth at Section 1101.68, rejecting arguments made by PMC that it had "substantially complied" with the regulations and that a rejection of its claims amounted to an unconstitutionally excessive fine or forfeiture. The Director of the Bureau of Hearings and Appeals adopted the recommendation of the hearing officer in its entirety.

■ On December 29, 2000, PMC petitioned this Court to review twenty of the cases, thereafter withdrawing its petition for the case docketed at 2898 C.D. 2000. We granted PMC's motion to consolidate the remaining nineteen appeals. On April 12, 2001, PMC filed another petition for review from a final order of the Director of the Bureau of Hearings and Appeals concerning DPW's denial of MA reimbursement because of a failure to submit an invoice exception request in accordance with the requirements of Section 1101.68. This Court, by order dated April 18, 2001, granted PMC's motion to consolidate this petition for review with the previously consolidated petition for reviews. Our scope of review of these cases is limited to a determination of whether the adjudications were made in accordance with law, whether any constitutional rights were violated, and whether any findings of fact upon which the decisions were made are supported by substantial evidence of record. *Sycamore Manor Health Center v. Department of Public Welfare*, 663 A.2d 820 (Pa. Cmwlth.1995).

PMC argues, generally, that DPW's refusal to reimburse it for care rendered to the twenty individuals involved amounts to a "forfeiture." Based on that premise, PMC raises the following questions for review: (1) whether the "forfeiture" was constitutional under the Eighth Amendment's prohibition on excessive fines and under a parallel provision in the Pennsyl-

vania Constitution; (2) whether the "forfeiture" was authorized by the enabling statutes and regulations; (3) whether the "forfeiture" is supported by this Court's ruling in *State College Manor, Ltd. v. Department of Public Welfare*, 92 Pa. Cmwlth. 89, 498 A.2d 996 (1985); (4) whether the "forfeiture" is wrongful under contract principles; and (5) whether attorney's fees are warranted for DPW's refusal to consolidate the hearings below.

PMC's arguments are based on two assumptions. First, that DPW's refusal to pay PMC's claims amounts to a forfeiture governed by the Eighth Amendment's prohibition against excessive fines, and second, that PMC's relationship with DPW regarding reimbursement for care of MA eligible recipients is governed by contract principles. Both assumptions are erroneous.

 PMC's arguments regarding the relevancy of contract principles are wholly without basis. Section 1101.68 is not a contract term. It is a duly promulgated regulation of an agency charged with broad authority to enact such regulation pursuant to Section 201 of the Public Welfare Code (Code).[2] *Centennial Spring Health Care Center v. Department of Public Welfare*, 115 Pa.Cmwlth. 450, 541 A.2d 806 (1988), *petition for allowance of appeal denied*, 521 Pa. 607, 555 A.2d 117 (1988). As a regulation duly promulgated under the legislative authority set forth in the Code, Section 1101.68 has the force and effect of law if (a) it is within the granted power, (b) it is issued pursuant to proper procedure, and (c) it is reasonable.[3] *Housing Authority of the County of Chester v. Pennsylvania State Civil Service Commission*, 556 Pa. 621, 730 A.2d 935

(1999). A duly promulgated regulation enjoys the presumption of validity, and a party bears a heavy burden to overcome that presumption. *Centennial Spring.* Indeed, because the establishment of regulations involves an exercise of an agency's discretion, a reviewing court may not disturb such discretion in the absence of fraud, bad faith, or abuse of power. *State College Manor.*

PMC argues that Section 1101.68 is contrary to federal enabling legislation and regulations and the Code. PMC, however, does not identify any provision that prohibits DPW from enacting the regulatory requirements set forth in Section 1101.68. Rather, PMC selects isolated language to suggest that the MA program is, at least in part, somehow designed to be a benefit program for MA providers and that regulations providing a rather ample window to submit correct invoices somehow frustrate that purpose.

 In *State College Manor*, we rejected an argument that Section 1101.68 was contrary to federal law. Indeed, the federal government has, of course, approved the Commonwealth's MA State Plan as a prerequisite for its participation in the MA program. *Centennial Spring.* We are thus obligated to grant great deference to that plan, as well as DPW's interpretations of its own regulations, unless they are unreasonable or inconsistent with federal regulations. *Id.* Not only has PMC failed to show that Section 1101.68 is contrary to federal statute or regulation, but federal regulations actually require a participating state to mandate that MA providers submit their claims "no later than" twelve months from the date of service. 42 CFR § 447.45(d)(1). Thus, Sec-

---

2. Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. § 201.

3. PMC does not make any argument regarding whether or not Section 1101.68 was issued pursuant to proper procedure.

tion 1101.68 is wholly in conformity with federal law.

■ Further, there is nothing unreasonable about the requirements of Section 1101.68, their ample time periods for compliance, and DPW's interpretation of Section 1101.68. As our Supreme Court stated in regard to judicial review of a regulation's reasonableness:

A court, in reviewing ... a regulation, is not at liberty to substitute its own discretion for that of administrative officers who have kept within the bounds of their administrative powers. To show that these powers have been exceeded in the field of action involved, it is not enough that the prescribed [action] shall appear to be unwise or burdensome or inferior to another. Error or lack of wisdom in exercising agency power is not equivalent to abuse. What has been ordered must appear to be so entirely at odds with fundamental principles as to be the expression of a whim rather than an exercise in judgment.

*Housing Authority,* 556 at 635, 730 A.2d at 942. We would note that not only has PMC utterly failed to demonstrate that Section 1101.68 is at odds in any manner with fundamental principles of law or procedure, or with any statute or federal regulation, but, as an aside, the regulation and its interpretation by DPW is by no means unwise, burdensome, or an exercise of a lack of wisdom.

We have previously, under different arguments, upheld the validity of Section 1101.68 and the time limits it imposes on MA providers to submit their invoices, and have required MA providers to strictly comply with such requirements. *State College Manor.* PMC argues, however, that *State College Manor* is inapplicable because Section 1101.68 was amended after that opinion was filed, an amendment that PMC argues is more beneficial for MA providers. Specifically, DPW's

amendment of Section 1101.68 accomplished, among other things, a language change that provided that untimely submitted invoices must now be "rejected," in slight contrast to the earlier provision that untimely submitted invoices must be "absolutely rejected."

PMC offers no cogent argument that there is a distinction between "rejected" and "absolutely rejected," particularly in the context of a clear deadline for the submission of MA claims. PMC's suggestion that the current version of Section 1101.68 must be read as rejecting the requirement that untimely claims are to be rejected is wholly without foundation or logic. Moreover, this change to Section 1101.68 has absolutely no bearing on the essential holding of *State College Manor* that strict compliance with DPW's regulations is mandatory and that substantial compliance is insufficient. *See also Ashton Hall, Inc. v. Department of Public Welfare,* 743 A.2d 529 (Pa.Cmwlth.1999), which was filed after the amendments to Section 1101.68 and affirmed the holding of *State College Manor* that strict compliance with DPW's regulations is mandatory.

■ PMC's argument that DPW's rejection of its claims for failure to comply with the requirements of Section 1101.68 amounts to an unconstitutional forfeiture is likewise without any basis. The Eighth Amendment prohibition that PMC cites is intended only to apply to fines or extracted payments imposed by and payable to the government as punishment for an offense. *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); *Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). DPW's rejection of claims, that we have determined are payable only upon strict compliance with DPW's regulations, is quite clearly not a fine or extraction of owned property as punishment for an of-

fense. We note that the Utah Court of Appeals has rejected a similar argument raised by PMC. In *South Davis Community Hospital, Inc. v. Department of Health, Division of Health Care Financing,* 869 P.2d 979 (Utah Ct.App.1994), the Utah Court held that a denial of payment to a hospital by the agency administering Utah's MA program, based on the hospital's failure to submit a required physician certification, was not a forfeiture. The Court explained that the denial of the hospital's claim was not a divestment of the hospital's property and thus not a forfeiture, rather it was a consequence of the hospital's failure to comply with the applicable directive.

■ We agree with the Utah Court's analysis. In order to have a constitutionally protected property interest, a party must have more than a unilateral expectation, but rather, a legitimate and enforceable claim under law. *R. v. Department of Public Welfare,* 535 Pa. 440, 636 A.2d 142 (1994). The rejection of PMC's MA claims was not based on an arbitrary act of DPW; rather it was based on PMC's unexplained failure to comply with straightforward regulations that provided a generous timeframe for compliance.[4] Thus, there is no basis in law or logic to equate the rejection of PMC's MA claims with a fine or forfeiture governed by the Eighth Amendment.

■ Finally, PMC argues that it is entitled to counsel fees because of DPW's refusal to consolidate nineteen of the cases at issue herein. PMC argues that this refusal required that it simply repeat the same legal argument for each case, causing an unnecessary expenditure of time. We may not grant PMC's request for several reasons, however. Among them is the fact

that the record does not demonstrate that PMC raised the issue of counsel fees below, thus compelling the conclusion that the issue is waived. Pa. R.A.P. 1551; *B.E. v. Department of Public Welfare,* 654 A.2d 290 (Pa.Cmwlth.1995). Further, an appellate court has no power to award counsel fees for matters pertaining to the conduct in the proceedings below but may only award them for frivolous appeals or dilatory, obdurate, or vexatious conduct of a party on appeal. *Township of South Strabane v. Piecknick,* 546 Pa. 551, 686 A.2d 1297 (1996).

For the above reasons, the final orders of the Department of Public Welfare are affirmed.

### ORDER

AND NOW, this 11th day of February, 2002, the orders of the Pennsylvania Department of Public Welfare in the above-captioned cases are hereby affirmed.

---

4. We would also note that the record indicates that PMC had at least thirty days following receipt of DPW's rejection of the original invoices to submit timely exception requests, but that the record fails to explain why PMC failed to submit such timely requests. (The record consists of the case file below pertaining to a single individual selected by the parties as being representative of the whole.)