**NORTHBROOK LIFE INSURANCE COMPANY, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 14, 2005.

Decided Jan. 26, 2006.

**1224**

Robert L. Weldon and Walter S. Foulk-rod, IV, Harrisburg, for petitioner.

John J. Butchar, Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY Judge FRIEDMAN.

Northbrook Life Insurance Company (Northbrook) petitions for review of the November 20, 1996, order of the Board of Finance and Revenue (Board) of the Commonwealth of Pennsylvania (Commonwealth), which determined that, under Article XVII of The Insurance Company Law of 1921 (hereinafter, Guaranty Association Act),[1] Northbrook was not entitled to offset against its 1993 premium tax liability any part of the non-taxable annuities assessment imposed on Northbrook by The Pennsylvania Life and Health Insurance Guaranty Association (Association).[2]

In 1993, Northbrook was engaged in the business of marketing life insurance policies and annuity contracts in Pennsylvania. Based on its activities in Pennsylvania, Northbrook was subject to the state's gross premiums and annuity considerations tax.[3] On its 1993 tax return, Northbrook reported taxable life insurance premiums of $79,681.00 and taxable annuity considerations of $34,201,422.00, which together yielded a tax liability of $685,622.00. Northbrook claimed an Association assessment tax credit of $159,171.00 consisting of $149,839.71 attributable to life insurance

---

1. Act of May 17, 1921, P.L. 682, *added by* section 19 of the Act of December 18, 1992, P.L. 1519, 40 P.S. § 991.1701–991.1718.

2. The Guaranty Association Act created the Association for the purpose of paying benefits and continuing coverage with respect to the life insurance, health insurance and annuity contracts of impaired or insolvent insurers. Section 1701 of the Guaranty Association Act, 40 P.S. § 991.1701. Insurers are required to be members of the Association as a condition of their authority to transact insurance business in Pennsylvania. Section 1704(a) of the Guaranty Association Act, 40 P.S. § 991.1704(a).

 In the performance of its duties, the Association is required to maintain two accounts: (1) the life insurance and annuity account; and (2) the health insurance account. *Id.* The life insurance and annuity account includes three sub-accounts, two of which are the an-nuity sub-account and the unallocated annuity sub-account. *Id.* To fund these accounts, the Association is authorized to assess member insurers, separately for each account, for such amounts as the board of directors finds necessary. Section 1707(a) of the Guaranty Association Act, 40 P.S. § 991.1707(a).

3. In 1993, section 902 of the Tax Reform Code of 1971, Act of March 4, 1971 (Tax Act), P.L. 6, *as amended*, 72 P.S. § 7902, imposed on every insurance company a two per cent tax on "gross premiums and annuity considerations" received from business done within Pennsylvania. Section 901(3) of the Tax Act defined "annuity considerations" to mean all sums received by an insurance company as consideration for annuity contracts, except sums received in connection with the funding of a pension qualified or exempted under sections 401, 403, 404, 408, 457 or 501 of the Internal Revenue Code of 1986, 26 U.S.C. §§ 401, 403, 404, 408, 457 and 501.

assessments and $9,331.00 attributable to annuity assessments.[4]

In March 1995, the Department of Revenue (Department) denied Northbrook the tax credit attributable to annuity assessments pursuant to its Corporation Tax Bulletin No. 95, Revised August 1992.[5] (Ex. B.) In June 1995, Northbrook petitioned for resettlement with the Department's Board of Appeals. (Ex. C.) In August 1995, the Department revised Corporation Tax Bulletin No. 95 to allow a tax credit for Association assessments related to *taxable* annuities. (Ex. W.) In February 1996, the Board of Appeals decided to allow Northbrook a $164,168.60 tax credit, including credit for Association assessments related to *taxable* annuities. (Ex. F.)

On July 24, 1996, Northbrook filed a petition for resettlement with the Board. (Ex. H.) Northbrook argued that it was entitled to take a tax credit for Association assessments related to *non-taxable* annuities. (Ex. H. at 3, ¶ g.) On November 20, 1996, the Board ruled that Northbrook was not entitled to such a tax credit. The Board also reduced Northbrook's tax credit to $156,042.21 based on an unrelated error. (Ex. I.)

■ Northbrook petitions for review of the Board's decision, arguing again that it is entitled to a tax credit for Association assessments related to *non-taxable* annuities.[6] In addition, the Commonwealth asks this court to consider whether the Board erroneously gave Northbrook a tax credit for assessments related to *taxable* annuities.[7] The question, then, is whether the tax credit provision of the Guaranty Association Act allows a tax credit for Association assessments related to taxable and/or non-taxable annuities.

■ Section 1711(a) of the Guaranty Association Act allows an insurer to take a

---

4. Section 1711(a) of the Guaranty Association Act provides that a member insurer may offset against its premium tax liability "a proportionate part" of the assessments imposed by the Association to the extent of 20% of the amount of such assessment for each of the five calendar years following the year in which such assessment was paid. 40 P.S. § 991.1711(a).
 The proportionate part of an assessment which may be offset ... [is] determined according to a fraction of which the denominator is the total premiums received by the company during the calendar year immediately preceding the year in which the assessment is paid and the numerator is that portion of the premiums received during such year on account of policies of life or health and accident insurance in which the premium rates are guaranteed during the continuance of the respective policies without a right exercisable by the company to increase said premium rates.
 Section 1711(b) of the Guaranty Association Act, 40 P.S. § 991.1711(b)

5. Corporation Tax Bulletin No. 95 did not allow a tax credit for Association assessments related to annuities. (Ex. V.)

6. This court considers tax appeals *de novo*, with our ruling based upon the record created before this court or on a stipulation of facts made by the parties. Thus, although this court hears appeals from Board decisions in our appellate jurisdiction, this court functions essentially as a trial court. *Tyson v. Commonwealth*, 684 A.2d 246 (Pa.Cmwlth.1996).

7. Northbrook contends that the Commonwealth failed to raise this issue in a timely manner. We disagree. "The Commonwealth may raise any question on review ... if 20 days written notice is given to the petitioner prior to *trial* of the intention of raising such new questions...." Pa. R.A.P. 1571(e) (emphasis added). Where, as here, the parties file a stipulation of facts in lieu of a trial, the Commonwealth may raise a new question in the stipulation of facts, negating application of the twenty-day notice rule. 1 G. Ronald Darlington, et al, Pennsylvania Appellate Practice § 1571:7 (2d ed.2004). In this case, the Commonwealth raised the question in the stipulation of facts. (*See* Stipulation of Facts, Nos. 18–20.)

tax credit against its premium tax liability for "a proportionate part of the assessments described in section 1707" of the Guaranty Association Act, 40 P.S. § 991.1707. 40 P.S. § 991.1711(a). The "assessments described in section 1707" include assessments necessary to fund each account and sub-account. 40 P.S. § 991.1707(a) & (c)(2). Two of the sub-accounts are: (1) the annuity sub-account; and (2) the unallocated annuity sub-account, which includes non-taxable annuity contracts qualified under section 403(b) of the Internal Revenue Code of 1986. 40 P.S. § 991.1704(a)(1). Because a tax credit is allowed for *all* assessments described in section 1707 and because section 1707 describes assessments necessary to fund taxable *and* non-taxable annuity accounts, we conclude that an insurer is entitled to a tax credit for "a proportionate part" of its assessments related to both taxable and non-taxable annuities. The Board erred in concluding otherwise.

 Having made that determination, we now are compelled to address the parties' Stipulation of Facts, No. 29, which states, "If it is determined by this Court that Northbrook is entitled to tax credits for annuity assessments, it is agreed the proportionate part factor shall be 1.00." In other words, the parties have agreed that, if Northbrook is entitled to a tax credit for its annuity assessments, then Northbrook's tax credit would be the entire amount, rather than a proportionate part, of the annuity assessments. However, the parties cannot stipulate to a "fact" that actually is a matter of law. Moreover, as shown below, the proportionate part factor can never be "1.00" when determin-

ing the tax credit for assessments related to annuities.

According to section 1711(b) of the Guaranty Association Act, the proportionate part of an assessment which may be offset against a company's premium tax liability is a fraction which has, as a denominator, "the *total premiums* received by the company during the calendar year immediately preceding the year in which the assessment is paid." 40 P.S. § 991.1711(b) (emphasis added). The word "premiums" is defined by statute to include amounts received on "covered policies." 40 P.S. § 991.1702. "Covered polic[ies]" are defined as policies or contracts within the scope of section 1703 of the Guaranty Association Act. 40 P.S. § 991.1702. Section 1703 of the Guaranty Association Act encompasses life and health insurance policies, as well as annuity contracts.[8] *See* 40 P.S. § 991.1703(b)(1). Therefore, the denominator of the proportionate part fraction is the *total* amount received on *all* types of covered policies.

The numerator of the proportionate part fraction is "that portion of the premiums received during such year on account of policies of *life or health and accident insurance in which the premium rates are guaranteed* during the continuance of the respective policies without a right exercisable by the company to increase said premium rates." 40 P.S. § 991.1711(b) (emphasis added). The numerator *never* includes amounts received on annuities. Thus, the numerator could never be as great as the denominator, meaning that

---

**8.** Northbrook argues that section 1711(b) of the Guaranty Association Act does not apply to assessments related to annuities because the nature of annuity policies is that charges to the insured can never be increased. (Northbrook's brief at 17–18.) However, the

proportionate part denominator clearly includes annuity considerations. Moreover, no other provision sets forth a different proportionate part for assessments related to annuities.

the proportionate part factor could never be "1.00."

Accordingly, we reverse and remand to the Board for re-calculation of Northbrook's 1993 tax credit in accordance with the foregoing analysis.[9]

Judge McGINLEY dissents.

## ORDER

AND NOW, this 26th day of January, 2006, the order of the Board of Finance and Revenue (Board) of the Commonwealth of Pennsylvania, dated November 20, 1996, is hereby reversed, and this case is remanded to the Board for re-calculation of Northbrook Life Insurance Company's 1993 tax credit in accordance with the foregoing opinion.

Jurisdiction relinquished.

This judgment shall become final unless exceptions are filed within thirty (30) days pursuant to Pa. R.A.P. 1571(i).

## DISSENTING OPINION BY Judge PELLEGRINI.

I respectfully dissent because the majority's holding, in effect, rewrites the legislation set forth under Section 1711 of the Guaranty Association Act.[1]

In this case, Northbrook Life Insurance Company (Northbrook) filed its tax return for 1993 indicating that it had reported taxable life insurance premiums in the amount of $79,681 and taxable annuity considerations of $34,201,422, yielding a tax liability of $685,622. It claimed a tax credit under The Pennsylvania Life and Health Insurance Guaranty Association Act (Act) of $159,171, which was comprised of life insurance assessments ($149,839.71) and

annuity assessments ($9,331). When the Department of Revenue (Department) denied Northbrook the tax credit attributable to the annuity assessments, Northbrook petitioned the Department's Board of Appeals for resettlement which decided to allow Northbrook a $164,168.60 tax credit, including a credit for assessments related to taxable annuities.[2] Subsequently, Northbrook petitioned for resettlement with the Board of Finance and Revenue (Board) arguing that it was entitled to a tax credit for assessments related to nontaxable annuities. When the Board denied that petition, Northbrook filed an appeal with this Court also arguing that it is entitled to a tax credit for assessments related to taxable annuities which the Board erroneously gave to Northbrook.

The majority reverses the Board on the basis that the Act allows for a tax credit against tax liability for "a proportionate part of the assessments described in section 1707" of the Act. It then goes on to define those assessments as including "assessments necessary to fund each account and sub-account," and concludes that the annuities are sub-accounts. I disagree with this analysis because no matter how other terms are defined in the Act, Section 991.1711 of the Act, 40 P.S. § 991.1711(b), specifically excludes taxable and/or nontaxable annuities in the computation of credits for assessments paid.

Section 991.1711(b) of the Act provides:

(b) The proportionate part of an assessment which may be offset against a member company's premium tax liability to the Commonwealth shall be determined according to a fraction of which

---

9. Because of our disposition of this issue, we need not address the remaining issues raised by the parties.

1. Act of May 17, 1921, P.L. 682, 40 P.S. § 991.1711.

2. The Department's Corporation Tax Bulletin No. 95 was revised in August 1995 to allow a tax credit for assessments related to taxable annuities.

the denominator is the total premiums received by the company during the calendar year immediately preceding the year in which the assessment is paid and the **numerator is that portion of the premiums received during such year on account of** *policies of life or health and accident insurance* **in which the premium rates are guaranteed** during the continuance of the respective policies without a right exercisable by the company to increase said premium rates.

Clearly, the General Assembly delineated which types of accounts would be utilized in determining the tax credit for a specific reason. Had they not intended for there to be a distinction and not intended to specifically exclude annuities and other types of accounts, there would have been no reason to include specifically-named types of accounts and exclude all others.

Based on the rules of statutory construction, I dissent.

Judge SIMPSON joins.