949 A.2d 333

**NORTHBROOK LIFE INSURANCE COMPANY, Appellant**

v.

**COMMONWEALTH of Pennsylvania, Appellee.**

Supreme Court of Pennsylvania.

Argued March 4, 2008.

Decided June 16, 2008.

---

Robert L. Weldon, Harrisburg, for Northbrook Life Ins. Co., appellant.

Nancy Livers Margolis, Steven Burgess Davis, Karl Stewart Myers, Stradley, Ronon, Stevens & Young, L.L.P., Philadel-

phia, for Ins. Federation of Pennsylvania and the American Council of Life Insurers, appellant amici curiae.

J. Bart DeLone, John Joseph Butchar, PA Office of Atty. Gen., Harrisburg, for the Com. of PA, appellee.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

## OPINION

Justice SAYLOR.

This direct appeal concerns the efforts of an insurance company to obtain a tax credit/offset against its premiums tax liability for assessments against annuity premiums paid to the Pennsylvania Life and Health Insurance Guaranty Association.

Under Article XVII of the Insurance Company Law of 1921,[1] to write annuities or life insurance in Pennsylvania, an insurance company must remain in good standing with the Pennsylvania Life and Health Insurance Guaranty Association (the "Guaranty Association"), see 40 P.S. § 991.1704(a), which provides a form of indemnity in favor of insured residents of the Commonwealth upon insurer insolvency, see 40 P.S. § 991.1706. In return for paying required assessments, the Guaranty Association Act allows insurers a credit against their tax liability under the state gross premiums and annuity considerations tax,[2] or premiums tax. See 40 P.S. § 991.1711(a). Thus, under the scheme, the insurance industry supplies the Guaranty Association with funds necessary to meet the obligations of insolvent insurers, and a portion of such advances are then repaid to the insurers, without interest, as tax credits over a five-year period.

The premium taxation scheme, however, also includes an adjustment based on a "proportionate part factor," which is

1. Act of May 17, 1921, P.L. 682, Art. XVII (as amended 40 P.S. §§ 991.1701–991.1718) (the "Guaranty Association Act").

2. See Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, § 902 (as amended 72 P.S. § 7902).

multiplied by premium payments to determine the credit allowed. This factor is based on prior-year premiums and is comprised of "that portion of the premiums received ... on account of policies of life or health and accident insurance in which the premium rates are guaranteed during the continuance of the respective policies without a right exercisable by the company to increase said premium rates," divided by total premiums. 40 P.S. § 991.1711(b). The limitation apparently serves at least the function of precluding tax credit in circumstances in which the insurer can recoup the assessment amount through prospective premium increases.[3]

The present appeal arises in the aftermath of 1991 legislative changes expanding the premiums tax to non-pension annuity premiums, *see* 72 P.S. § 7902 (Historical and Statutory Notes), and changes to Guaranty Association policy reflecting substantially larger assessments attributable to annuity premiums, which previously had been relatively nominal. Apparently the new practices on the part of the Guaranty Association were part of its response to liabilities arising from large insurance company insolvencies. Against this background, Appellant, an insurance company dealing primarily in annuity contracts, sought premiums tax credit for the assessments against its annuity premiums. The present appeal centers on tax year 1993, in which Appellant claimed a credit of $165,475, based on 1991 and 1992 life insurance and annuity assessments.

The Department of Revenue initially denied the credit, but, upon Appellant's petition for resettlement, the Board of Appeals allowed it for taxable annuities (which represented the bulk of the claim), but not with respect to nontaxable annuities.

Appellant filed a petition for review with the Board of Finance and Revenue, which found that the credit should be granted for 1991 pertaining to all life insurance and taxable

**3.** As developed below, under the Commonwealth Court's approach to the proportionate part factor, the adjustment also would constrain the credit available on the portion of the assessment attributable to annuity premiums. *See infra* note 4 and accompanying text.

and nontaxable annuity assessments, as well as 1992 life insurance assessments, but that credit with respect to 1992 annuity assessments should be limited to those involving only taxable annuities.

Subsequently, Appellant filed a petition for review in the Commonwealth Court, where the parties presented a stipulation of facts, including an agreement that, if tax credits were allowed for both taxable and nontaxable annuities, the proportionate part factor applicable to such annuities should be 1.0, thus resulting in full credit. *See also* Stipulation of Facts ¶ 67 (reflecting the parties' agreement that, if it was determined that credit was to be accorded for all annuity-related assessments, a total credit was to be allowed in the amount of $165,476).

The Commonwealth Court issued a divided, *en banc* opinion, in which it remanded for a recalculation of Appellant's premiums tax credit. *See Northbrook Life Ins. Co. v. Commonwealth*, 890 A.2d 1223 (Pa.Cmwlth.2006) (*en banc*). The majority initially developed that the premiums taxation statute allows an insurer a tax credit against its tax liability for a "proportionate part of the assessments described in section 1707" of the enactment. 40 P.S. § 991.1711(a). Section 1707 assessments, the court explained, include those necessary to fund each "account and sub-account" maintained by the Guaranty Association in furtherance of its functions, and two of the sub-accounts are (1) the annuity sub-account; and (2) the unallocated annuity sub-account, which includes nontaxable annuity contracts. *See* 40 P.S. § 991.1704. From this structure, the majority concluded as follows: "Because a tax credit is allowed for *all* assessments described in section 1707 and because section 1707 describes assessments necessary to fund taxable *and* non-taxable annuity accounts, . . . an insurer is entitled to a tax credit for 'a proportionate part' of its assessments related to both taxable and non-taxable annuities." *Northbrook*, 890 A.2d at 1226 (emphasis in original). Thus, the majority held that the Board had erred in distinguishing nontaxable annuity premiums from taxable ones.

After resolving the specific dispute raised by the parties, the majority deemed itself compelled to address the parties' stipulation providing for the application of a proportionate part factor of 1.0. The majority found that the stipulation concerned a matter of law, and not fact, and thus deemed the propriety of the stipulation to be an issue it could raise of its own accord. *See Northbrook,* 890 A.2d at 1226.

The majority then concluded that annuity premiums are not included within the numerator of the proportionate part fraction, because the governing statute specifies that only **"life or health and accident insurance"** is to be considered in the numerator. *Id.* (quoting 40 P.S. § 991.1711(b) (emphasis in original)).[4] Further, although the Department's historical practice was apparently to apply separate proportionate part fractions to the funds allocated to different accounts and sub-accounts, the Commonwealth Court determined that the statute required the use of a single fraction for the insurer's entire business.[5]

■ Both Appellant and the Commonwealth filed exceptions, which the *en banc* court denied in a memorandum opinion and order, over the lone dissent of Judge Simpson (with Judge Pellegrini not participating). Appellant filed the present direct appeal, raising, *inter alia,* the following issue:

Whether the Commonwealth Court was required to use the stipulated and statutorily required proportionate part factor of 1.00 in calculating the portion of Guaranty Association Act annuity assessments that can be taken as tax credit against Northbrook's 1993 Gross Premiums and Annuity Considerations Tax liability.

4. Since the denominator without question includes annuity premiums, the effect of the Commonwealth Court's decision in this regard was to essentially eliminate the tax credit for annuity premiums.

5. Judge Pellegrini dissented, opining that, regardless of references to annuity premiums in other provisions of the Guaranty Association Act, Section 1711(b) specifically excludes them from the computation of credits for assessments paid. Thus, the dissent concluded that the General Assembly specifically delineated which types of accounts could be utilized in determining the tax credit, annuities are not included, and the majority's contrary decision "rewrites the legislation." *Northbrook,* 890 A.2d at 1227 (Pellegrini, J., dissenting).

The parties are in agreement that the issue presents a question of law, over which our review is plenary. Moreover, as developed below, we find the issue dispositive, and therefore, limit our consideration to it.

Presently, Appellant stresses that the question presented by the parties to the Commonwealth Court was limited to whether annuity assessments related to both taxable and nontaxable annuities yielded premiums tax credit. Appellant contends that the intermediate appellate court erred in addressing matters beyond that limited issue, particularly, ones controlled by express stipulation of the parties. According to Appellant, Pennsylvania courts have consistently permitted parties to limit the issues available for consideration by a reviewing court, with the sole constraint being that litigants cannot stipulate to matters affecting the jurisdiction, business, or convenience of the courts. *See* Brief for Appellant at 19–20 (citing *Parsonese v. Midland Nat'l Ins. Co.*, 550 Pa. 423, 426, 706 A.2d 814, 815 (1998); *Foote v. Maryland Cas. Co.*, 409 Pa. 307, 312–13, 186 A.2d 255, 258 (1962); *Foley Bros., Inc. v. Commonwealth*, 400 Pa. 584, 589, 163 A.2d 80, 83–84 (1960)). Appellant explains that, as a practical necessity, legal issues are routinely stipulated in tax cases, thus permitting the courts and the litigants to channel their focus toward disputed matters. Indeed, Appellant contends that such stipulations are an integral part of negotiations and preparation for litigation. Appellant also argues that its due process rights were impinged by the Commonwealth Court's decision to overturn the stipulation, since Appellant lacked the opportunity to present legal argument or develop a record concerning subject matter that it believed to be undisputed. Since the only issue presented to the Commonwealth Court was whether annuity assessments are subject to tax credit, Appellant requests that we overturn the Commonwealth Court's determination concerning the calculation of the proportionate part factor, which Appellant contends is contrary to the methodology employed in the longstanding practices of the Department of Revenue and the insurance industry.

The Commonwealth takes a broader view of the appropriate subject matter of the appeal. According to the Commonwealth, the Commonwealth Court properly determined that the parties' stipulation concerned a matter of law not fact. As such, the Commonwealth argues that the intermediate appellate court's disregard of the stipulation was consistent with case law holding that review concerning legal issues cannot be supplanted by litigant stipulations. In this regard, the Commonwealth references this Court's decisions in *Moorhead v. Crozer Chester Medical Center*, 564 Pa. 156, 765 A.2d 786 (2001), and *Pittsburgh Miracle Mile Town & Country Shopping Center v. Board Property Assessment and Review of Allegheny County*, 417 Pa. 243, 209 A.2d 394 (1965).

■■ Upon our review, we agree with Appellant's position that the Commonwealth Court should not have disregarded the parties' express stipulation. At least in the most general terms, Appellant and the Commonwealth both accept the general rule that litigants may limit the issues available for consideration by a reviewing court, provided that the parties cannot stipulate to matters affecting the jurisdiction, business, or convenience of the courts. *See Parsonese*, 550 Pa. at 426, 706 A.2d at 815; *Foote*, 409 Pa. at 312–13, 186 A.2d at 258. In this way, matters in controversy may be focused and shaped. Unlike the Commonwealth, however, we do not read the jurisprudence as affirmatively precluding stipulations that limit the range of legal issues available for the reviewing court's consideration. While language of the *Moorhead* case, read in isolation, might suggest to the contrary, *see Moorhead*, 564 Pa. at 161, 765 A.2d at 789 (indicating that "this court's review of a legal issue cannot be supplanted by a stipulation"), *Moorhead* also stressed that the legal issue under consideration in that case was, in fact, not the subject of the stipulation. *See id.* at 161, 765 A.2d at 789 (observing that it was clear that, in executing a stipulation indicating the fair and reasonable value of medical services, the appellee/hospital was not conceding legal matters governing its liability for the full value of such services).

Moreover, the support for *Moorhead's* broader statement was drawn from *Pittsburgh Miracle Mile. See Moorhead,* 564 Pa. at 161, 765 A.2d at 789. That decision, however, was particularly addressed to stipulations concerning the fair market value of land or improvements as separate units in the context of real estate assessment appeals. *See Pittsburgh Miracle Mile,* 417 Pa. at 245–46, 209 A.2d at 394. As the Court explained, concerns exist in such arena regarding potential manipulation or undue advantage that could result if reviewing courts were prevented from considering the fair market value of properties as a whole. *See id.* at 245–46 & n. 1, 209 A.2d at 395 & n. 1. We do not read the rule discussed in *Pittsburgh Miracle Mile* as having a wider application, and indeed, such a reading would conflict with the general approach reflected in *Parsonese* and *Foote,* referenced by Appellant. *See, e.g., Parsonese,* 550 Pa. at 426, 706 A.2d at 815 ("Parties may by stipulation resolve questions of fact *or limit the issues,* and, if the stipulations do not affect the jurisdiction of the court or the due order of the business and convenience of the court, they become the law of the case." (emphasis added)).[6] To the extent that the *dictum* in *Moorhead* suggests to the contrary, it is presently disavowed.[7]

In summary, Appellant is correct that, for purposes of the 1993 tax year, the Commonwealth Court should have respected the parties' stipulation that the appropriate proportionate part factor pertaining to the tax credit calculation arising from assessments on annuity premiums was 1.0.[8]

6. All other decisions of this Court discussing the rule arising out of *Pittsburgh Miracle Mile* recognize its appropriate context in the setting of real estate assessment appeals. *See, e.g., Deitch Co. v. Board of Prop. Assessment, Appeals and Review,* 417 Pa. 213, 217, 209 A.2d 397, 400 (1965); *Morris v. Board of Property Assessment, Appeals and Review,* 417 Pa. 192, 194 n. 1, 209 A.2d 407, 408 n. 1 (1965).

7. Parenthetically, the Commonwealth does not contend that there are considerations suggesting the application of a unique approach to its stipulations as a litigant, and, in the absence of argument along these lines, we decline to fashion such a rule of our own accord.

8. Since this conclusion merely arises from a stipulation by litigants in the context of an individual appeal, it obviously has no broader application than the resolution of the present dispute.

The order of the Commonwealth Court is reversed; its opinion is vacated except for its treatment of the question of whether an insurer is entitled to a tax credit (subject to proportionate-part-factor adjustment) for assessments related to taxable and nontaxable annuities;[9] and the matter is remanded for entry of an appropriate order in Appellant's favor consistent with this opinion and the parties' stipulation.

Chief Justice CASTILLE, Justices EAKIN and BAER, TODD and McCAFFERY join the opinion.

9. Presently, the Commonwealth offers no challenge to this aspect of the Commonwealth Court's decision.