**ALLSTATE LIFE INSURANCE COMPANY, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2009.

Decided March 25, 2010.

---

Robert L. Weldon, Harrisburg, for petitioner.

John J. Butchar, Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

Allstate Life Insurance (Allstate) petitions this Court for review of a November 19, 1996 order (Resettlement Order) by the Board of Finance and Revenue (Board),[1] which established a tax credit to offset against Allstate's 1993 Gross Premiums and Annuity Considerations Tax (Annuity Considerations Tax)[2] liability. The

1. The Resettlement Order was made final and appealable by the resettlement dated January 7, 1997.

2. The Insurance Premiums Tax, 72 P.S. § 7901—7906, is referred to as the "Gross Premiums Tax." The Act of August 4, 1991, No. 22, P.L. 97, amended the tax base to encompass life, accident, and health insurance premiums as well as taxable or non-qualified annuities for periods July 1, 1991 through December 31, 1995. During this time period, annuities held in pension funds

tax credit is determined in accordance with Article XVII of the Insurance Company Law of 1921 (Guaranty Act).[3] Allstate contests the Board's disallowance of tax credit with respect to its 1992 assessments by the Pennsylvania Life and Health Insurance Guaranty Association (Association) involving nontaxable annuities. Allstate petitioned this Court for review to determine the correct methodology to be employed in calculating the amount of assessment tax credit to which an insurer providing annuities is entitled. In resolving this issue, this Court must interpret Section 1711(a) and (b) of the Guaranty Act, 40 P.S. § 991.1711(a)-(b), which sets forth a complex mathematical equation for determining a tax credit for assessments paid by insurers.

## I. BACKGROUND

### A. Guaranty Act

The Guaranty Act created the Association, which is designed to assure that insurance policy benefits are paid to policyholders when an insurer becomes insolvent. All insurance companies in the Commonwealth must pay assessments to be in good standing with the Association. Section 1707(a) of the Guaranty Act provides that the Association "shall assess the member insurers, separately for each account, at such time and for such amounts as the board finds necessary." 40 P.S. § 991.1707(a). There are two types of assessments: Class A, which funds the Association's expenses, and Class B, which provides funding to cover the policy benefits of insolvent insurers. Class B assessments fund two different accounts: 1) the life insurance and annuity account; and 2) the health insurance account. 40 P.S. § 991.1704(a). Within the life insurance and annuity account are three sub-accounts: 1) life insurance; 2) annuity; and 3) unallocated annuity. Id.[4]

The Guaranty Act provides two methods for insurers to recoup the assessments they have paid to the Association: 1) they can increase the relevant policy premiums (thus passing the cost to their insureds); or 2) request a credit against their tax liability under the Annuity Considerations Tax. Insurers can only request a tax credit when the amounts of the relevant policy premiums are fixed and cannot be increased, as the policy amounts are for annuities.

The Guaranty Act provides:

(a) A member insurer may offset against its premium tax liability to this Commonwealth a proportionate part of the assessments described in section

---

or by governmental entities were deemed nontaxable or "qualified" annuities. The Act of June 30, 1995, No. 21, P.L. 139, removed taxable annuity considerations from the tax base for periods January 1, 1996 and thereafter. During the period of July 1, 1991 through 1995, the tax was referred to by the Department of Revenue and will be referred to in this opinion as the "Annuity Considerations Tax."

**3.** Act of May 17, 1921, P.L. 682, *as amended,* added by Section 19 of the Act of December 18, 1992, P.L. 1519, 40 P.S. §§ 991.1701–991.1718.

**4.** Section 1707(c)(2) provides:

Class B assessments against member insurers for each account and subaccount shall be in the proportion that the premiums received on business in this Commonwealth by each assessed member insurer for policies or contracts covered by each account for the three (3) most recent calendar years for which information is available preceding the year in which the insurer became impaired or insolvent, as the case may be, bears to such premiums received on business in this Commonwealth for such calendar years by all assessed member insurers.

40 P.S. § 991.1707(c)(2).

1707 to the extent of twenty per centum (20%) of the amount of such assessment for each of the five (5) calendar years following the year in which such assessment was paid. In the event a member insurer should cease doing business, all uncredited assessments may be credited against its premium tax liability for the year it ceases doing business.

(b) The proportionate part of an assessment which may be offset against a member company's premium tax liability to the Commonwealth shall be determined according to a fraction of which *the denominator is the total premiums received by the company during the calendar year immediately preceding the year in which the assessment is paid and the numerator is that portion of the premiums received during such year on account of policies of life or health and accident insurance in which the premium rates are guaranteed during the continuance of the respective policies without a right exercisable by the company to increase said premium rates.*

40 P.S. § 991.1711(a)-(b) (emphasis added). "Thus, under the scheme, the insurance industry supplies the Guaranty Association with funds necessary to meet the obligations of insolvent insurers, and a portion of such advances are then repaid to the insurers, without interest, as tax credits over a five-year period." *Northbrook Life Insurance Company v. Commonwealth*, 597 Pa. 18, 20, 949 A.2d 333, 334 (2008) (*Northbrook II*) (discussing § 1711(a).). Further, under subsection (b), the amount of each assessment subject to the credit is determined by multiplying the assessment by a fraction—the "proportionate part"—that represents the portion of each assessment that is tied to fixed or guaranteed premiums. 40 P.S. § 991.1711(b). This limitation assures that insurers cannot recoup, as a tax credit, any amounts that they could otherwise pass through to their insureds as premium increases.

## B. Northbrook Life Insurance Cases

This Court and the Supreme Court have previously examined Section 1711 in two reported opinions in *Northbrook Life Insurance v. Commonwealth*, 890 A.2d 1223 (Pa.Cmwlth.2006) (*Northbrook I*) and *Northbrook II*. Because the Supreme Court ultimately reversed and vacated this Court's order in that case based on a stipulation of the parties, which we do not have here, and carefully left open the issues now before us, these opinions provide helpful background, but do not resolve the issues in this case.

The facts in *Northbrook I* were as follows. Prior to August 1995, the Department of Revenue (Department) denied tax credits to Northbrook for *any* of Northbrook's annuity assessments pursuant to the Department's Corporate Tax Bulletin No. 95. However, in August 1995, the Department revised Bulletin No. 95 and allowed Northbrook to take a tax credit based on the annuity assessments on Northbrook's *taxable* annuities.[5] Thus, on appeal to this Court, Northbrook request-

---

5. Apparently, until the early 1990's the Department did not allow tax credits for annuity assessments; however,

In the early 1990s there were several large insurance company insolvencies. As a result, large assessments were issued against insurance companies.... During this same period of time, the Legislature expanded the premiums tax to include some annuities for the first time. Pursuant to the Act of August 4, 1991, P.L. 97, No. 22, certain annuity considerations received after June 30, 1991, were subject to tax. *Previously, only insurance premiums were subject to tax. The tax on annuities was repealed* by the Act of June 30, 1995, P.L. No. 21.

(Commonwealth's Br. at 7 (citation omitted) (emphasis added).)

ed only a tax credit for the assessments on its non-taxable annuities. Before this Court, the Department changed its position and argued that there should be no tax credit for any annuity assessment, whether taxable or non-taxable.

This Court held that an insurer could receive a tax credit for assessments related to both taxable and non-taxable annuities interpreting the language in Section 1711(a)—"assessments described in section 1707"—to "include assessments necessary to fund each account and sub-account" established by the Guaranty Act. *Northbrook I*, 890 A.2d at 1226 (citing 40 P.S. § 991.1707(a)). This Court noted that two of the sub-accounts are the annuity sub-account and the unallocated annuity sub-account, which includes non-taxable annuity contracts qualified under Section 403(b) of the Internal Revenue Code of 1986. *Id.* (citing 40 P.S. § 991.1704(a)(1)). Thus, the Court held that,

> [b]ecause a tax credit is allowed for *all* assessments described in section 1707 and because section 1707 describes assessments necessary to fund taxable *and* non-taxable annuity accounts, we conclude that an insurer is entitled to a tax credit for "a proportionate part" of its assessments related to both taxable and non-taxable annuities.

*Id.* (emphasis in original).

Having determined that there could be a tax credit for all annuity assessments, this Court then examined what the amount of the credit would be. This determination involved the "proportionate part factor." This Court noted that the parties had entered into a stipulation of facts that included an agreement providing that, if tax credits were allowed for both taxable and non-taxable annuities, the applicable proportionate part factor would be 1.0, resulting in a full tax credit. However, this Court rejected that stipulation stating that "the parties cannot stipulate to a 'fact' that actually is a matter of law." *Id.* This Court also determined that the proportionate part factor could never be 1.0 when calculating the tax credit for assessments related to annuities. This Court explained:

> According to section 1711(b) of the Guaranty Association Act, the proportionate part of an assessment which may be offset against a company's [Annuity Consideration Tax] liability is a fraction which has, as a denominator, "the *total premiums* received by the company during the calendar year immediately preceding the year in which the assessment is paid." 40 P.S. § 991.1711(b) (emphasis added). The word "premiums" is defined by statute to include amounts received on "covered policies." 40 P.S. § 991.1702. "Covered polic[ies]" are defined as policies or contracts within the scope of section 1703 of the Guaranty Association Act. 40 P.S. § 991.1702. Section 1703 of the Guaranty Association Act encompasses life and health insurance policies, as well as annuity contracts. *See* 40 P.S. § 991.1703(b)(1). Therefore, the denominator of the proportionate part fraction is the *total* amount received on *all* types of covered policies.

> The numerator of the proportionate part fraction is "that portion of the premiums received during such year on account of policies of *life or health and accident insurance in which the premium rates are guaranteed* during the continuance of the respective policies without a right exercisable by the company to increase said premium rates." 40 P.S. § 991.1711(b) (emphasis added). The numerator *never* includes amounts received on annuities. Thus, the numerator could never be as great as the

denominator, meaning that the proportionate part factor could never be "1.00." *Id.* at 1226–27 (emphasis in original) (footnote omitted). Accordingly, this Court reversed the Board's decision and remanded the matter to the Board to recalculate the insurer's tax credit in accordance with our Court's analysis.

A dissenting opinion from this Court disagreed that an insurer was entitled to a tax credit for its assessments related to any annuities, stating that the majority "rewrites the legislation set forth under Section 1711 of the Guaranty Association Act." *Northbrook I,* 890 A.2d at 1227 (Pellegrini, J., dissenting). The dissent focused on the plain language of the statute stating:

[N]o matter how other terms are defined in the Act, Section [1711] of the Act, specifically excludes taxable and/or non-taxable annuities in the computation of credits for assessments paid.

. . . .

Clearly, the General Assembly delineated which types of accounts would be utilized in determining the tax credit for a specific reason. Had they not intended for there to be a distinction and not intended to specifically exclude annuities and other types of accounts, there would have been no reason to include specifically-named types of accounts and exclude all others.

*Id.* at 1227–28 (citation omitted).

Both insurer and the Commonwealth filed exceptions to our Court's decision, which this Court denied en banc, over a dissenting opinion. The insurer then filed a direct appeal to the Supreme Court raising the issue of whether this "Court was required to use the stipulated and statutorily required proportional part factor of 1.00 in calculating the portion of Guaranty Association Act annuity assessments that can be taken as tax credit against Northbrook's

1993 Annuity Considerations Tax liability." *Northbrook II,* 597 Pa. at 23, 949 A.2d at 336. The Supreme Court limited its consideration to this issue.

Before the Supreme Court, the insurer argued that, since the only issue presented to this Court was whether annuity assessments are subject to a tax credit and not the amount of the tax credit, the Supreme Court should overturn our Court's determination concerning the calculation of the proportionate part factor, which insurer contended was contrary to the methodology employed by the longstanding practices of the Department and the insurance industry. The Supreme Court agreed with the insurer that this Court "should have respected the parties' stipulation that the appropriate proportionate part factor pertaining to the tax credit calculation arising from assessments on annuity premiums was 1.0." *Id.* at 26, 949 A.2d at 337–38. As such, the Supreme Court entered the following order:

The order of the Commonwealth Court is reversed; its opinion is vacated except for its treatment of the question of whether an insurer is entitled to a tax credit (subject to proportionate-part-factor adjustment) for assessments related to taxable and nontaxable annuities;[9] and the matter is remanded for entry of an appropriate order in Appellant's favor consistent with this opinion and the parties' stipulation.

---

[9] Presently, the Commonwealth offers no challenge to this aspect of the Commonwealth Court's decision.

*Id.* at 27 & n. 9, 949 A.2d at 338 & n. 9.

In accordance with footnote 9, the Supreme Court did not decide whether this Court correctly determined that the insurer was entitled to the tax credit for annuity assessments; however, the Supreme Court provided us with some helpful ob-

servations. First, the Supreme Court pointed out that, "[s]ince the denominator without question includes annuity premiums, the effect of the Commonwealth Court's decision in this regard was to *essentially eliminate the tax credit for annuity premiums*." *Id.* at 23, n. 4, 949 A.2d at 335, n. 4 (emphasis added). Therefore, although this Court appeared to permit recovery of a tax credit for annuity assessments, the practical result of this Court's interpretation of the proportionate part factor was the elimination of the tax credit for all annuity assessments. Second, the Supreme Court noted that "the Department's historical practice was apparently to apply separate proportionate part fractions to the funds allocated to different accounts and sub-accounts," however, this Court's decision would have ended this practice and required "the use of a single fraction for the insurer's entire business." *Id.* at 23, 949 A.2d at 335. The Supreme Court vacated, in large part, this Court's opinion and, thus, we have no binding precedent regarding the calculation of the tax credit.[6]

The Supreme Court's observations in *Northbrook II* are central to the matter currently before this Court. Allstate asks this Court to interpret the Guaranty Act to allow it to have a "full" tax credit for annuity assessments, which would require this Court to include the annuity premiums/assessments in both the numerator and the denominator of the proportionate part fraction. Allstate also requests this Court to require the Department to continue its historical practice of separate proportionate part fractions for each type of insurance account. Unlike in the *Northbrook* cases, there is no stipulation as to a

particular proportionate part factor to use in calculating the portion of Guaranty Act annuity assessments that Allstate can take as a tax credit against its 1993 Annuity Considerations Tax liability. Thus, this Court must determine how to calculate the proportionate part factor.

C. **Allstate's 1993 Tax Credit**

Allstate filed its 1993 Annuity Considerations Tax Report reflecting a tax due of $486,124. Against this tax liability, Allstate claimed a tax credit of $319,553. In the settlement of Allstate's 1993 tax liability, the Department accepted the tax liability as reported. However, the Department reduced the reported tax credit from $319,553 to $29,207.74. No tax credit was allowed with respect to annuity assessments. Allstate protested the tax credit determination by filing a Petition for Resettlement with the Board of Appeals. Allstate increased its claimed tax credit to $495,812, which was based on 20% of the 1991 and 1992 guaranteed premium life and annuity assessments issued by the Association.

The Board of Appeals issued a decision increasing Allstate's tax credit from $29,207.74 to $389,148.72. That amount consisted of 20% of Allstate's 1991 annuity assessments, as claimed and unreduced by a proportionate part factor, since annuity premiums are always guaranteed over the life of the policy, as well as 20% of 1991 and 1992 life insurance assessments statutorily reduced by a proportionate part factor consisting of guaranteed life premiums divided by total life premiums. The Board of Appeals reduced Allstate's 1992 annuity assessments by a factor of the ratio of

6. The Supreme Court's opinion did not vacate this Court's resolution of the question of whether the insurer was entitled to a tax credit for assessments related to annuities because that determination had not been challenged on appeal. Similarly, the parties here do not challenge the determination that the insurer is entitled to a tax credit for assessments on annuities.

taxable annuities to total annuities. The factor employed was unrelated to the portion of annuities attributable to guaranteed premium policies.

Allstate filed a Petition for Review to the Board, contesting the Board of Appeals' disallowance with respect to Allstate's 1992 non-taxable annuity assessments. In the Resettlement Order, the Board agreed with the Board of Appeals that a tax credit should be granted with respect to 1991 guaranteed premium life and annuity assessments, as well as 1992 guaranteed premium life assessments. However, with respect to the 1992 annuity assessments, the Board limited the tax credit to those assessments involving taxable annuities. Thus, the Board decreased Allstate's tax credit by $8,795.82, from $389,148.72 to $380,352.90.

## II. ALLSTATE'S APPEAL

### A. Parties' Arguments

Allstate now petitions this Court for review of the Board's Resettlement Order and contests the Board's disallowance of a tax credit with respect to 1992 assessments involving non-taxable annuities. Allstate argues[7] that the Guaranty Act affords a tax credit for assessments related to annuities on the same basis as it authorizes tax credits for assessments related to life or accident and health insurance. To treat assessments related to annuities in a more restrictive manner, Allstate argues, would violate the Unifor-

mity Clause of the Pennsylvania Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. As such, Allstate contends that the proportionate part factor should be ascertained *separately* for assessments of each type of insurance as opposed to a "consolidated" proportionate part factor as this Court described in *Northbrook I*. Alternatively, Allstate argues that, because annuity premiums are always guaranteed and may not be altered prospectively, it cannot recoup the annuity assessment amounts from its insureds and must seek a tax credit for the entirety of the annuity assessment to recoup its assessment obligations. Therefore, according to Allstate, there is no need to determine how to calculate the tax credit using the annuity assessment proportionate part factor pursuant to Section 1711(b) because the proportionate part factor for annuity assessments is always one.

In opposition, the Commonwealth argues that this Court should reject Allstate's requests to remand for a new calculation and, instead, affirm our prior interpretation of Section 1711 as set forth in *Northbrook I*.[8] The Commonwealth contends that, because the term "annuities" does not appear in the numerator of the proportionate part fraction as defined in Section 1711(b), the clear and unambiguous language of that section precludes the use of annuity assess-

---

7. The Insurance Federation of Pennsylvania (Federation) filed a brief as amicus curiae in support of Allstate's arguments on appeal. The Federation, a non-profit organization and Pennsylvania insurance trade association, represents over 200 insurance companies that issue all types of insurance policies in the Commonwealth. The Federation's amicus brief is well organized and helpful in understanding Allstate's arguments on appeal.

8. As described above, *Northbrook I* held that: (1) annuity assessments are entitled to a tax credit; (2) the proportionate part factor applies to all types of insurance policies, including annuities; (3) the denominator of the proportionate part factor is the total amount received on all types of policies, including annuities; and (4) the numerator of the proportionate part factor includes guaranteed insurance premiums, but never includes amounts received on annuities.

ments in the numerator and that term should not be read into the section. Because of this, the Commonwealth argues that the use of separate proportionate part factors previously used by the parties can only result in zero credit for all annuity assessments. Further, the Commonwealth contends that Allstate's alternative argument is without support in the law because Section 1711(a) is the only provision that provides an offset or credit for assessments. The Commonwealth directs this Court to the parties' Stipulation which provides, in relevant part, that "[i]t is the determination of the portion, if any, of annuity assessments that are eligible for tax credit that is the basis of this litigation." (Stipulation ¶ 19.) Accordingly, the Commonwealth contends that the only way to determine the portion of the assessment to be granted credit is through the application of the proportionate part fraction.

## B. Calculating Tax Credits for Annuity Assessments

In light of our Supreme Court's refusal in *Northbrook II* to adopt the analysis of the *Northbrook I* dissenting opinion, *Northbrook II*, 597 Pa. at 23 n. 5, 27 n. 9, 949 A.2d at 335 n. 5, 338 n. 9, the parties do not dispute that annuity assessments are entitled to a tax credit. Thus, the only issue before this Court is how that tax credit should be calculated under the Guaranty Act. The General Assembly, through the Guaranty Act, provides to those insurers who cannot adjust their premium rates to meet their assessment obligations an opportunity to fully recover the assessments paid by allowing a tax credit, in the amount of the assessment, against the insurers' Annuity Considerations Tax liability. 40 P.S. § 991.1711(a). To request the tax credit, an insurer must first verify that it does not include its assessments in setting its policy premiums, which Allstate has done. The insurer must then calculate its assessment tax credit to ascertain the total tax credit available for a particular class of assessment. To calculate the tax credit, the insurer must first determine the assessment amount involved and multiply that assessment amount by a fraction referred to as the "proportionate part factor." 40 P.S. § 991.1711(a)-(b).

### 1. The Proportionate Part Factor

The proportionate part factor fraction is comprised of a numerator and a denominator. The statute describes the value in the denominator as consisting of "the total premiums received by the company during the calendar year immediately preceding the year in which the assessment is paid." 40 P.S. § 991.1711(b). The statute describes the value of the numerator as "that portion of the premiums received during such year on account of polices of life or health and accident insurance in which the premium rates are guaranteed during the continuance of the respective policies without a right exercisable by the company to increase the premium rates." *Id.*[9]

9. For example, if an insurer collects a total of $1,000 in premiums in 1992, that $1,000 would be the denominator for the 1993 assessment year. If $500 of the $1,000 in total premiums collected were premiums guaranteed by the insurer not to increase during the life of policy, that $500 would be the numerator for the 1993 assessment year. These values make sense because, if an insurer guarantees its insureds that the insureds' premiums will not increase over the life of the policy, the insurer cannot raise those premiums to recoup its assessment obligations, and, therefore, the insurer must be given another way, i.e., a tax credit, in order to recoup the remaining assessment amounts paid. However, to prevent double recovery, the tax credit is only applicable to those amounts that the

The Commonwealth asserts, pursuant to this Court's interpretation in *Northbrook I,* that the language of Section 1711(b) is clear and unambiguous. In contrast, Allstate argues that this language is ambiguous, is susceptible to different interpretations, and must be read in a manner that affords a tax credit for assessments related to annuities on the same basis as it authorizes for assessments related to life or accident and health insurance. In its analysis, Allstate highlights the internal inconsistencies in this Court's interpretation of Section 1711(b) in *Northbrook I,* inconsistencies which the Supreme Court also recognized in *Northbrook II.* By interpreting Section 1711(b) as we did in *Northbrook I,* this Court essentially rendered the tax credit afforded to annuity assessments under the Guaranty Act illusory, as the Supreme Court in *Northbrook II* stated:

> As developed below, under the Commonwealth Court's approach to the proportionate part factor, the adjustment also would constrain the credit available on the portion of the assessment attributable to annuity premiums. *See infra* note 4 and accompanying text.
>
> . . . .
>
> Since the denominator without question includes annuity premiums, the effect of the Commonwealth Court's decision in this regard was to essentially eliminate the tax credit for annuity premiums.

*Northbrook II,* 597 Pa. at 21, n. 3, 23, n. 4, 949 A.2d at 334, n. 3, 335, n. 4. We agree with Allstate that the statute is ambiguous and that we must engage in statutory interpretation to determine the legislature's intent.

■ Where, as here, a statute is unclear or susceptible to different interpretations, courts will look to the principles of statutory construction to determine the legislative intent. Section 1921(c) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(c); [10] *Commonwealth v. Packer,* 568 Pa. 481, 488, 798 A.2d 192, 196 (2002). In determining legislative intent, all sections of a statute must be "read together and in conjunction with each other, and construed with reference to the entire statute." *Housing Authority of Chester County v. Pennsylvania State Civil Service Commission,* 556 Pa. 621, 640, 730 A.2d 935, 945 (1999). Additionally, courts must attempt to give meaning to every word in a statute as we cannot assume that the legislature intended any words to be mere surplusage. *Lukes v. Department of Public Welfare,* 976 A.2d 609, 620 (Pa.Cmwlth.2009). Furthermore, courts must avoid construing a statute in such a way as would lead to an absurd result. Section 1922(1) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1922(1).

■ There is no dispute that, for the purposes of the Guaranty Act, annuities

---

insurer would be incapable of recovering by raising its premiums or by adjusting its dividends. 40 P.S. § 991.1711(d).

**10.** When statutory language is not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

are assessed in the same manner as all other types of insurance. In fact, the Guaranty Act does not distinguish between types of insurers in discussing assessments of "member insurers" or the permitted credits to assessments paid by "member insurers." See 40 P.S. § 991.1707(a), (c)(2) (stating that "[f]or the purpose of providing the funds necessary to carry out the powers and duties of the association, the board of directors shall assess the *member insurers,* separately for each account . . . as the board finds necessary"; and "[c]lass B assessments against *member insurers* for each account and sub[-]account shall be in the proportion that the premiums received on business in this Commonwealth by *each assessed member insurer* for policies or contracts covered by each account." (emphasis added)). Pursuant to Section 1711(a), titled "Credits for assessments paid," the Guaranty Act permits "[*a*] *member insurer*" to take a tax credit for the assessments paid to the Association. 40 P.S. § 991.1711(a) (emphasis added). However, the Guaranty Act places a limitation on "a member insurer's" ability to receive a tax credit if the member insurer can adjust its premium rates or dividends to offset the assessment. *See* 40 P.S. § 991.1707(g) (stating that "it shall be proper for *any member insurer,* in determining its premium rates and policyowners dividends . . . to consider the amount reasonably necessary to meet its assessment obligations . . . provided that such insurer has not elected to take tax credits." (emphasis added)). By using the language "a member insurer," "member insurers," or "any member insurer," the Guaranty Act establishes that a member insurer can be assessed and can recoup its assessment obligations either by calculating premium rates and dividends to include the assessments imposed or claim a tax credit offset for such assessment accounts. These provisions of the Guaranty Act are equally applicable to all types of insurance without differentiating between assessments and/or credits for life or accident and health or annuity insurance. This Court will keep these provisions, and the principles of the Guaranty Act, in mind when interpreting the proportionate part factor set out in Section 1711(b).

### 2. The Proportionate Part Factor—Denominator

■ Initially, we note that our Supreme Court, in *Northbrook II,* recognized that the annuity premiums collected by an insurer must be included in the denominator of the proportionate part factor. *Id.,* 597 Pa. at 23, n. 4, 949 A.2d at 335, n. 4 However, despite the Supreme Court's holding in *Northbrook II,* the question remains whether the proportionate part factor denominator used by an insurer to calculate its assessment tax credit should consolidate the values of all the types of insurance offered by the insurer or should be calculated separately for each type of insurance product. In other words, will an insurer's denominator include all of the premiums collected, or only the premiums collected on a particular insurance type? We agree with Allstate that the latter formula should be used.

The Guaranty Act states that the denominator of the proportionate part factor "is the *total premiums* received by the company during the calendar year immediately preceding the year in which *the assessment* is paid." 40 P.S. § 991.1711(b) (emphasis added). The words "total premiums" are followed and modified by the words that follow: "in which *the assessment* is paid." "The assessment" is singular and specific to one type of insurance policy assessment. There are different types of Class B insurance policy assessments that fund two different accounts (life insurance and annuity account, and

health insurance account) and within the life insurance and annuity account are three sub-accounts (life insurance, annuity and unallocated annuity). 40 P.S. § 991.1704(a). Thus, we conclude that the denominator is to be based on "total premiums" of each "assessment" class and sub-class. Therefore, the denominator of the proportionate part fraction is the *total* amount received on the involved assessment class, making the fraction a separate proportionate part factor for each account and sub-account, and not, as this Court held in *Northbrook I*, on *all* types of covered policies.[11]

Moreover, we agree with Allstate that separate proportionate part factors are necessary to limit the tax credit to the portion of a particular assessment attributable to guaranteed premium policies of an insurer. The intended purpose of the proportionate part factor is thwarted if separate factors are not employed. If "total premiums" in the denominator is read to include all premiums, regardless of line of business, any insurer writing life, accident and health and annuity policies will have its tax credit reduced on a basis unrelated to the extent to which its life policies, for example, involve guaranteed premiums. This is true because the numerator is limited by its terms to guaranteed policy premiums. Therefore, any increase in the denominator results in a decrease in tax credit. An insurer that issues a mix of business, such as all guaranteed life policies and all adjustable rate accident and health policies, would have a reduced ability to recover a life assessment through the tax credit mechanism even though it has no ability to recover the life assessment through prospective policyholder premium adjustments. In contrast, another insurer writing only guaranteed rate life policies

and no accident and health or annuity insurance would be permitted to recover a life assessment in full. The Guaranty Act supports this interpretation that separate fractions be used for each type of insurance policy assessment because it uses the disjunctive "or" in describing amounts to be placed in the proportionate part factor numerator. *See* 40 P.S. § 991.1711(b) ("life *or* health and accident insurance in which the premium rates are guaranteed during the continuance of the respective policies") (emphasis added). The disjunctive necessitates separate fractions consisting of each guaranteed premium. The language regarding the denominator also indicates that the proportionate part factor is to be developed separately for each type of insurance "in which the *assessment* is paid." 40 P.S. § 991.1711(b) (emphasis added). To interpret Section 1711(b) as anything but a separate fraction would be absurd and unreasonable, a result clearly not intended by the legislature. 1 Pa.C.S. § 1922(1).

### 3. The Proportionate Part Factor—Numerator

■ The next question we must consider is whether the guaranteed premiums from annuities should be included in the numerator of the proportionate part factor fraction. We agree with Allstate that the numerator should include annuity premiums.

The premium rates of annuities assessed to Allstate in the case at bar are fixed and, thus, guaranteed over the life of the annuity policy. Therefore, Allstate cannot raise its premiums to recover its assessment on the annuities. The Guaranty Act defines the numerator as "that portion of the premiums received during such year on account of policies of life or health and acci-

---

11. We note that this interpretation is consistent with the Department's historical practice as described by the Supreme Court in *Northbrook II*.

dent insurance *in which the premium rates are guaranteed during the continuance of the respective policies without a right exercisable by the company to increase said premium rates.*" 40 P.S. § 991.1711(b) (emphasis added). Because Allstate can never recover its assessment on annuities from premium increases, and the proportionate part factor is designed to eliminate from the tax credit only the assessment amounts that can be recovered from premium increases, the annuity premiums should be included in the numerator. Although the language is less than clear, to exclude annuities from the numerator would, in effect, make the tax credit illusory, which would run counter to the Legislature's intent. This interpretation of Section 1711(b) addresses the Supreme Court's concern that we would otherwise "eliminate the tax credit for annuity premiums," *Northbrook II,* 597 Pa. at 23, n. 4, 949 A.2d at 335, n. 4, if "[t]he numerator *never* include[s] amounts received on annuities," and "the denominator of the proportionate part fraction is the *total* amount received on *all* types of covered policies." *Northbrook I,* 890 A.2d at 1226 (emphasis in original).

### III. CONCLUSION

By interpreting the denominator of the proportionate part factor to include only the total amount received on the involved *assessment* class, and not on all types of covered policies, and by interpreting the numerator to include that portion of the premiums received on account of *annuity* policies, this Court adopts a proportionate part factor per assessment type, not per company. In other words, in order to grant a tax credit for assessments of premiums that are guaranteed over the life of

a policy, a "separate" proportionate part factor must be used, as was longstanding Department practice, and not the "consolidated" factor which was adopted by this Court in *Northbrook I.*

Accordingly, after reviewing the Guaranty Act and the Supreme Court's guidance in *Northbrook II,* we believe the proper interpretation of Section 1711(b) is to calculate a tax credit separately for each type of insurance policy assessment and to include annuities in the numerator of the factor. As such, we vacate the Resettlement Order of the Board disallowing tax credit with respect to Allstate's 1992 assessments involving non-taxable annuities and the resulting resettlement, and remand this matter to the Board to recalculate Allstate's tax credit in accordance with the foregoing opinion.[12]

### ORDER

**NOW,** March 25, 2010, the Resettlement Order dated November 19, 1996 of the Board of Finance and Revenue (Board) in the above-captioned matter is hereby vacated and this matter is remanded to the Board to recalculate Allstate Life Insurance Company's tax credit in accordance with the foregoing opinion.

This judgment shall become final unless exceptions are filed within thirty (30) days pursuant to Pa. R.A.P. 1571(i).

Jurisdiction relinquished.

### DISSENTING OPINION BY Judge PELLEGRINI.

The central issue in this appeal is whether an insurer is entitled to a tax credit against its gross premiums and annuity considerations tax (Annuity Considerations Act) liability for annuity assessments paid

---

**12.** Because of our disposition, we need not reach the merits of Allstate's constitutional arguments.

under the Insurance Company Law of 1921 (Guaranty Act).[1] Because I believe that the plain language of the statute precludes a tax credit for annuity assessments, I respectfully dissent.

The Pennsylvania Life and Health Insurance Guaranty Association (Association) was created by the Guaranty Act to protect policyholders when insurance companies become unable to pay their life, accident or health insurance or annuity obligations due to insolvency or impairment. To provide this protection, the Association is authorized to issue assessments against solvent insurers to the extent that they sell the type of insurance of the now insolvent insurers. The Association sets the amount of the assessments by determining the solvent insurer's proportionate share of business in the Commonwealth over the previous three calendar years. The Guaranty Act allows insurers to recover assessments they have paid to the Association by requesting a credit against their tax liability under the Annuity Considerations Act. 40 P.S. § 991.1711(a). However, the Guaranty Act limits this tax credit to a proportionate part of the assessments as follows:

> The proportionate part of an assessment which may be offset against a member company's premium tax liability to the Commonwealth shall be determined according to a fraction of which the denominator is the total premiums received by the company during the calendar year immediately preceding the year in which the assessment is paid and *the numerator is that portion of the premiums received during such year on account of policies of life or health and accident insurance* in which the premium rates are guaranteed during the continuance of the respective policies

without a right exercisable by the company to increase said premium rates. 40 P.S. § 991.1711(b). (Emphasis added).

The majority holds that this statutory language is ambiguous and resorts to legislative intent to determine whether insurers are entitled to tax credits for their annuity assessments. However, the statutory language above is clear and unambiguous. It does not include taxable and nontaxable annuities in the computation of credits for assessments paid. Instead, it distinguishes between the types of accounts which are entitled to a tax credit by limiting the numerator of the proportionate part factor to only "that portion of the premiums received during such year on account of *policies of life or health and accident insurance.*" 40 P.S. § 991.1711(b). If the General Assembly had intended for insurers to be able to recover assessments on annuities, they would have specifically included annuities in the numerator of the proportionate part factor. The majority's holding, in effect, rewrites this section of the Guaranty Act by inserting annuity assessments into the numerator of the proportionate part factor.

Because taxable and/or non-taxable annuity premiums are not contained within the plain language of the statute, insurers are not entitled to a tax credit for annuity assessments under the Guaranty Act. For this reason, I would affirm the order of the Board and respectfully dissent.

President Judge LEADBETTER joins.

1. Act of May 17, 1921, P.L. 682, added by Section 19 of the Act of December 18, 1992, P.L. 1519, as amended, 40 P.S. §§ 991.1701–991.1718.